## JOSEPH WILSON v. TOWN OF GREENSBORO.

*Contract to keep Highways in Repair. Damage. General Issue.*
*Recoupment. Contributory Negligence.*

The plaintiff contracted with the defendant to keep some portion of its highways in "good repair for public travel" for four years ; and, also, in the same contract agreed to build a new bridge and road. The plaintiff failed to build the bridge and road according to the contract ; and, also, to keep the highways in good repair ; and the defendant was compelled to pay damages caused by the insufficiency of said highways ; and, also, pay for repairing them. *Held*, in an action of covenant on the sealed contract,

1. That the plaintiff could not recover ; as the benefit derived from his labor was less than the damages received from the non-performance of the contract.
2. That what the defendant paid to settle a suit brought against it for injuries received on the highway, and the incidental expenses of the suit ; also, for injuries received by another party without suit ; also, for repairing the highway ; and the damage for not completing the new road and bridge, are available in defence, under the general issue.
3. The selectmen of the defendant town were not guilty of contributory negligence, although they had known that the bridge was out of repair ; because they gave notice to the plaintiff, and he agreed to repair it.
4. Rule stated as to allowing damages in defence for the non-performance of a contract.
5. R. L. s. 3086, selectmen can make contracts for repairing highways,—construed.

COVENANT. Heard on the report of a referee, September Term, 1880, REDFIELD, J., presiding. Pleas, general issue, that plaintiff did not perform his covenant, and several pleas in offset.

The case was referred to Hon. TIMOTHY P. REDFIELD. Judgment on the report for the plaintiff. The plaintiff and defendant by its selectmen entered into a sealed contract by which the plaintiff bound himself :

"To take and keep in good repair for public travel at all seasons of the year for and during the term of four years from the 15th day of May last, that portion of the roads in said Greensboro, commencing at Hardwick line on the northerly side of Lamoille River, &c." . . . . . "to the acceptance of the selectmen of said town agreeably to chapter 25, section 57 of the General Statutes of Vermont" . . . . and the said town of Greensboro by its selectmen agree to pay the said Wilson the sum of two hundred and thirty-five dollars for the first year and two hundred and twenty-five dollars for each year of the three following years on said

above specified contract for the repairs of said above described roads, to be paid each year in quarterly payments after said roads have been accepted by the selectmen of said town agreeably to chapter 25, section 57 of the General Statutes, always reserving 25 per cent. of said above named sums for the security of the faithful performance of said work as agreed by the said Wilson and the selectmen of said town.    .    .    .    .

By the contract the plaintiff was also to build one new bridge and a new road with certain conditions.    The contract was made July 8th, 1876.    The referee found, among other facts, as follows :

.    .    .    .    .    .    .    .    .    .    .    .

" The plaintiff entered upon the performance of said contract at the date of the same, and continued to take charge of the repairing of the roads named in said contract until the 2d day of May, 1878, when he notified the selectmen of said town that he should proceed no farther under said contract in repairing said roads, and abandoned the further performance of it."    .    .    .    .    .    .    .    .    .    .    .    .

" The defendant also claimed that there should be deducted from the plaintiff's claim damages which the defendant had been compelled to pay to travellers on said roads during said time, occasioned by the insufficiencies and want of repair of said roads, which accrued from the neglect of the plaintiff to perform his contract aforesaid.    I find that on the 7th day of July, 1877, Peter Blair and his wife, of Stannard, while passing over the bridge across a stream on the road leading from Greensboro Bend to the village, received injuries. The horse broke through the planking of bridge and fell, and Mrs. Blair was thrown out of the wagon and bruised, jarred and considerably injured.    One leg, hip and side were bruised ; and by reason of her injuries she was confined to her bed and room for several days, and was disabled from doing house work for many weeks. She employed different physicians and paid for medical attendance upon her some $75, and claimed that by the injury her health was permanently impaired.    She gave the statute notice to the defendant of the nature and extent of her injuries, and that she claimed damages therefor ; and soon after brought a suit against the defendant in the name of herself and husband, to recover said damages.

The plaintiff was vouched in to defend said suit ; and afterwards was invited by the defendant to take part in the negotiation for the settlement of said claim and suit ; but he declined to have anything to do with it.    The defendant then settled with Mrs. Blair, and paid her $200 for the discharge of her said claim and discharge of the suit.    The defendant also paid its attorney for services in said suit $37.75, and also paid $8 to two physicians for the examination of Mrs. Blair, as to the character of her injuries, previous to said settlement.

I find that said settlement by the defendant of this claim, in the man-

ner it was done, under all the circumstances was wise and prudent ; that the road at the place of accident at the time was clearly "insufficient and out of repair"; and that Mr. Melvin, one of the selectmen, from the fall before up to the time of said accident, knew that the bridge was out of repair and unsafe for public travel, and defendant in great danger of being subjected to the payment of a larger sum. I find that the selectmen of the defendant town had repeatedly called the attention of the plaintiff previous to the injury to the condition of said bridge ; that the planking was wearing thin and needed repair, which he promised to do; that a few days, less than a week, before said injury, one of said selectmen notified the plaintiff that said bridge required immediate repair ; and the plaintiff then assured said selectmen that he would repair said bridge *the next day*, but neglected to do it. I find that the selectmen relied upon that promise and assurance of the plaintiff, and had good reason so to do, and the selectmen did not know that the bridge was not repaired until after the accident. There were no holes in the planking of the bridge. The cause of the accident was that by reason of the planks of the bridge having become so worn and weak, the foot of Blair's horse broke through between two planks. If the damages which the defendant has suffered and paid by reason of the plaintiff's non-performance and breach of said contract in not repairing said bridge, are to be deducted from what otherwise would be due the plaintiff, I find that sum to be $245.75.

I find that in the spring of 1877 the defendant paid A. S. Clary ten dollars as damages for an injury to his horse, occasioned by a defective sluice across the road leading to Stannard, included in said contract. The injury occurred in the fall of 1876. The defendant was liable to pay said damages by reason of the want of repair of said sluice ; and the payment of said sum on settlement of said damages was an act of prudence on the part of the defendant, and the neglect to repair said sluice by the plaintiff before said injury was a breach of the plaintiff's covenants in said contract. I find that in April, 1878, the defendant employed the said A. S. Clary to break out the roads obstructed with snow, and repair some bad places in the road near East Greensboro, and paid him therefor the sum of $7.50. Said repairs were made and work done on the road embraced in said contract. It was necessary that said work should have been done at once ; and the plaintiff suffered said roads to remain out of repair after by due diligence he should have known they were so. The defendant did not notify plaintiff that said roads were out of repair, or request him to do anything in the premises ; but I find that the plaintiff in the due performance of said contract should have made these repairs and done this work before it was done by the defendants, and in neglecting to do so has broken his covenants in said contract. I find that the "new road" mentioned in said contract was never fully

completed ; and never unconditionally accepted by the selectmen of the defendant town. The selectmen paid the plaintiff for building the " new road" and bridge by a town order of $90.00, the contract price, on the express condition, to which the plaintiff agreed to " stiffen up" the bridges (in a manner agreed upon by the parties) and gravel up the road to a higher grade, " across the swamp" near Barr's house, and put up railing on either side of said embankment, as required by the contract. I find that plaintiff never did this work, and that this additional work on the " new road," ·which the contract required, and which plaintiff agreed to do as aforesaid was worth $40. I find that the plaintiff did comparatively a small amount of *thorough* work, very little with plow and scraper. The first year of his contract he did considerable by the way of removing stones from the road and ' patching up' the worst places. The second year he did considerable thorough work by the way of turnpiking portions of said roads that by use had become flat and wet.

But many of the roads included in the contract, of less travel, that were 'insufficient and out of repair,' were left unrepaired by the plaintiff during the year. It would have required all the additional expense› which the defendant claims, to have kept and maintained all the roads in said contract in a *thorough state of repair* during said two years, having in view the amount of travel reasonably expected on such roads at all seasons of the year. But I think the parties in making this contract had in view a somewhat lower standard. They intended and expected that the plaintiff would act in good faith and keep and maintain said roads in an ordinary and reasonable state of repair—in such state of repair as the roads in said town had generally before that time been maintained. Judging the parties by the latter standard, I think the plaintiff should have expended on the roads the first year $60, and the second year $40, to have kept said roads in the state of repair expected by the parties, and required by the contract. . . . . .

The plaintiff claimed that no damages for injuries to travellers occasioned by defective roads should be deducted, because it was the duty of the defendant under the statute to have seasonably made the necessary repairs and deducted the cost from the funds reserved and kept back in defendant's hands ; and many other points which I think may all be raised on the report.

. . . . . . . .

I find the charge for attorneys' services reasonable in amount and proper charges, and that the sum paid to the physicians was reasonable and proper. The plaintiff abandoned the contract for the alleged reason that the defendant refused to pay him according to the terms of the contract. The defendant refused to pay him according to the terms of the contract, claiming that the contract had not been performed fully and in a proper manner, and that plaintiff ought to assume and pay the damages

claimed by Blair and Clary. I have adjudged that the plaintiff should recover for the first year the sum of $40.94, and for the second year the sum of $177.50, making the sum of $208.44, with interest. The defendant claimed that there could be no recovery for the last quarter, or for the 'reserved' 25 per cent. of the next prior quarter, because the plaintiff abandoned the contract before the quarter ended, and that the reserved 25 per cent. of the quarter ending May 15, 1878, $14.62, did not become due till August 15, 1878, and that this suit was brought on the 12th of the same August. But I have considered that the plaintiff cannot recover on the ground of *strict performance* of his covenants ; but that he may recover as of a *quantum valebat* for the benefit defendant has received, for the plaintiff's labor under the contract, deducting such damages as accrue to the defendant by reason of plaintiff's failure to perform his covenants in the contract. And I have taken the contract as the rule of compensation.

The question of allowing the damages paid to Blair and Clary, and the expenses incident to that suit, is respectfully referred to the court.

If the damages paid by the defendant for injuries occasioned by the insufficiency of these roads should be adjudged by the court to be proper claims for deduction, in that case the defendant should recover its costs, or if they are proper claims in offset then the defendant should recover the sum of $27.31, with interest and cost."

*P. K. Gleed*, for the defendant.

The plaintiff is liable for the Blair damage. The object of the statute could not have been to tempt the contractor to break his covenant by releasing him from such damage as by law, without the statute, would be the result of his breach of contract. The liability of the plaintiff to indemnify the town falls within the rule of damages announced and applied in *Keyes* v. *Western Vermont Slate Co.*, 34 Vt. 81, and in *Eureka Marble Co.* v. *Windsor Mfg. Co.*, 51 Vt. 170. In general, the delinquent is holden to make good the loss occasioned by his delinquency. But this liability is limited to the direct damages which, according to the nature of the subject, may be contemplated or presumed to result from his failure. 7 Greenl. 55 ; Sedgw. Dam. 125. The damage that did happen from that unrepaired bridge is precisely what might have been contemplated or presumed.

*J. P. Lamson* and *Belden & Ide*, for the plaintiff.

The damage paid by defendant to Blair and wife cannot be recovered of the plaintiff by defendant in offset. They are too re-

mote. " They are not such damages as may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract." It is highly improbable that the plaintiff or any other prudent man would have entered into this contract, understanding that for the comparatively slight consideration he was to receive, he was insuring the town against claims for damage for insufficiency. 124 Mass. 421; 28 N. Y. 72. These damages are not recoverable, because they could have been avoided by the exercise of reasonable prudence by the defendant. 7 Greenl. 51; Sedgw. Dam. 165; 37 N. Y. 210. These damages cannot be allowed, because the negligence of the defendant not only contributed but directly caused them. The statute made it the duty of the defendant to keep the bridge in good and sufficient repair. This statute created a burden that could not be shifted or transferred so far as the public right was concerned. The cases of *Wiley* v. *Fredericks*, 10 Gray, and *Rogers* v. *Western Vermont Slate Co.*, 34 Vt., have no bearing upon this case, for the reason that in neither of those · cases was the party claiming the damages resting under a peremptory statutory duty to make the repairs, and thus prevent the damage claimed. They simply had a right to do so under their contract. An omission to do what a party has a right to do under a contract is quite different in effect from an omission to do that which the law expressly enjoins.

The opinion of the court was delivered by

ROYCE, J. The statute laws of the State, at the time when the contract was entered into between the plaintiff and defendant, required that all highways and bridges within the bounds of any town should be kept in good and sufficient repair at all seasons of the year; and made the town in which any special damage should happen to any person, by means of the insufficiency or want of repair of any such highway or bridge responsible for the same.

Previous to 1856 the matter of repairing highways and bridges was entrusted to officers elected or appointed by the towns; and the money appropriated by the towns for that purpose was expended by them. In 1856 (Revised Laws Sec. 3086) a statute

was passed empowering towns to direct their selectmen to make contracts for repairing their highways and bridges, for a term not exceeding four years. And in case such a contract was made, no highway surveyors were to be appointed, or highway tax to be assessed, during such term; but the town might raise a sufficient sum of money to support said highways. It was under that statute that the contract in question was entered into.

It was the obvious intention of the Legislature, by the enactment of that statute to enable towns, wherever, in their judgment, it might be economical or convenient, to provide by contract for the doing of what they were primarily under obligation to do in the matter of repairing their highways and bridges. That portion of the 3091st sec. which provides for a semi-annual inspection of the highway contracted to be kept in repair by the selectmen, and makes the obligation of the town to pay the contractor dependent upon the acceptance of the highway inspected, constituted the selectmen, as between the town and the contractor, judges of the fact as to whether the contractor had fulfilled his contract or not; and power is given to the selectmen, at such inspection, or at a special inspection, if they find any repairs necessary, to notify the contractor of the fact, and if he does not make the same, provides that they may forthwith make such repairs at the expense of the contractor. No inspection of the highway which the defendant contracted to keep in repair appears to have been made by the selectmen; so that the question whether the defendant had kept the highways and bridges in repair as required by his contract had to be determined by the referee, upon such evidence as was offered; and no question has been made in this court as to the rule adopted by the referee in the ascertainment of the amount due to the plaintiff on account of his labor and expenditures under the contract. The only question here made is whether the damages paid by the defendant to Blair and Clary, and the amount paid to Clary for repairs, and the incidental expenses of the suit brought by Blair, can be applied in offset or in reduction of the plaintiff's claim. The damages paid to Blair are found to have been the result of the want of repair of a bridge, which it was the duty of the plaintiff, under his contract, to have kept in repair. It is

claimed that the payment of such damages is not provided for by the contract, and that it was not intended that they should be paid by the plaintiff. The intention of the Legislature, as we have seen, was to empower the towns to procure the duty that rested upon them to be performed by another ; and, although the towns were not by that law relieved from liability, yet, as between themselves and the party with whom they might contract, he was to be substituted for the towns to do that in relation to the repairs of highways and bridges which the towns were under legal obligation to do. The contract entered into by the parties effected such substitution, and bound the plaintiff to make such repairs upon the highways and bridges as the defendant was under legal obligation to have made. There is no other defensible construction that can be put upon the contract. The intention of the town, in making the contract, was, to thereby insure to the travelling public sufficient highways and bridges, and thus to protect themselves against any claim that might result from insufficiency ; and the expectation of the plaintiff, as evidenced by the language of the contract, was, that he would keep the highways and bridges in such a state of repair that the town would be so protected. It is further claimed that the selectmen of the defendant town, having had such notice of the insufficiency of the bridge as the report finds that they did have, when the accident happened to Mrs. Blair, it was their duty to make the necessary repairs of the same ; and having neglected to do so, the plaintiff was not responsible for the damages that resulted from the want of them. While it is true that it was the duty of the defendant to act in good faith and do all that could be reasonably required to prevent the occurrence of any accident that would subject the plaintiff to liability, and contributory negligence on their part would exonerate the plaintiff,—it is to be borne in mind that it was the duty of the plaintiff to make the needed repairs to the bridge. And it is found that the selectmen of the defendant town had previous to the injury to Mrs. Blair, repeatedly called his attention to the condition of the bridge and the fact that it needed repairing ; that one of said selectmen, less than a week before the accident, notified him that the bridge needed immediate repair, and he

assured said selectman that he would repair it the next day, but neglected to do so ; that the selectmen relied on his promise and assurance, and had good reason to do so, and did not know that the bridge was not repaired until after the accident.

If the plaintiff is relieved from responsibility, it cannot be upon the ground that there was contributory negligence upon the part of the selectmen of the defendant town. They had the right to rely upon the promise and assurance of the plaintiff, whose duty it was to make the repairs ; and could not be said to be guilty of an omission of duty in not making them until they had notice, or good reason to believe that they had not been made by the plaintiff. *Keyes* v. *Western Vermont Slate Co.*, 34 Vt. 81, was a suit to recover damages for the failure of the defendant to keep a drain in repair ; and the defendant requested the court to instruct the jury that the measure of damages to the plaintiff for that neglect was the cost of the repairs, and not the detriment he might have suffered from the drain remaining out of repair. But the court charged that, if after the plaintiff gave the defendant notice that the drain was out of repair, and they recognized their obligation to repair it, and agreed from time to time to do so, but failed and neglected to repair it within a reasonable time, they were liable for such damages as the plaintiff had sustained as the immediate and necessary results of such neglect. In the opinion delivered by POLAND, Ch. J., it is said : " If, when the plaintiff requested the defendants to repair the drain, they had refused to do so, it would have been the duty of the plaintiff to have done it, and all he could have recovered would have been the cost of the repairs. He could not, in such a case, lie by and incur loss for want of the repairs far beyond the cost of fixing it, and make the defendants liable. But if the defendants, on having notice to repair the drain, admitted their liability to repair it, and promised to do so, and thus kept the plaintiff from making the repairs, and thus prolonged the period of loss to the plaintiff, so that it exceeded the costs of the repairs, that loss should justly fall upon the defendants. If they omitted to make them, on being called on, and kept the plaintiff from doing it by false and delusive promises, they cannot complain of being made liable to the loss occasioned by

the delay." And in *Eureka Marble Co.* v. *Windsor Mfg. Co.*, 51 Vt. 170, it is said that the damages which the complainants were entitled to recover were such as they, by the exercise of reasonable diligence and ordinary prudence, could not prevent under the circumstances in which they were placed.

Applying the law, as promulgated by these cases, to this, leads us to the conclusion that there was no negligence on the part of the selectmen of the defendant town that excuses the plaintiff from liability. The neglect of the plaintiff to make such repairs to the bridge where the accident happened to Mrs. Blair, as he was bound by his contract to make, was the proximate cause of her injury; and the amount, with the incidental expenses paid by the defendant to settle the claim to Mrs. Blair, should be deducted from the claim of the plaintiff.

The damage paid by the defendant to Clary should be allowed. The damage to Clary's horse was occasioned by a want of repair of the highway, which the plaintiff was bound by his contract to keep in repair. And there is no fact found that indicates that the defendant was negligent in not having made the repairs.

So, too, the amount paid Clary for repairs upon the highway should be allowed. The repairs were necessary and such as the plaintiff should have made, and by due diligence he would have ascertained that they were necessary; and his neglect to make them justified the defendant in making them at his expense. The failure of the plaintiff to build the bridge and highway according to his contract, and to keep the highways in such a state of repair as the referee has found he was under obligation to do, is proper matter of defence to the plaintiff's claim for compensation under his contract; and the amounts found due on account of such failures should be allowed.

It has been claimed that all of the above matters of defence should have been made by special plea, and are not available under the general issue. The obligations of the plaintiff, as specified in his contract, were in the nature of warranties; and it has been repeatedly held that under the general issue the defendant might show that the plaintiff made a warranty that had been broken, and reduce the plaintiff's recovery to the extent

that he had sustained loss by the breach of the warranty. *Allen* v. *Hooker*, 25 Vt. 138; *Keyes* v. *Western Vermont Slate Co.*, 34 Vt. 81. The rule upon the subject is stated in the case last cited to be, that however distinct and independent the several stipulations or covenants of the parties may be, if they are contained in the same instrument, the defendant may reduce the plaintiff's recovery by showing the damages he has sustained by the non-performance on the part of the plaintiff; and this under the general issue. The sums thus allowed being in excess of the amount allowed to the plaintiff, the judgment of the County Court is reversed, and judgment on the report for the defendants for its cost.