## SIMEON WEBB v. W. E. LAIRD.

*Contribution to maintenance of dam. Actual expenditures may be*
*recovered. Injunction damages. Construction of injunction.*

1. If one of two persons, who are jointly liable to contribute to the main--
   tenance of a dam, neglects to do so, the other may recover of him
   whatever he has been obliged to actually expend about such common
   duty, provided he has prosecuted the work as cheaply as he could under
   the circumstances and conditions in which he was placed.

2. A defendant, who has been wrongfully enjoined, may recover as injunc-
   tion damages whatever loss he has sustained by reason of obeying the
   injunction as he reasonably understood it.

3. The allowance of the master to the defendant of damages for 30 days loss
   of the use of his mill occasioned by his arrest for violating the injunc-
   tion is here disallowed, except as to three days, for that the facts
   reported do not show that such loss was properly caused by the injunc-
   tion.

Bill in chancery. Heard upon master's report and exceptions
thereto at the March Term, 1890. Powers, Chancellor, decreed
the defendant the several sums allowed by the master with
interest. The orator appeals.

The orator and defendant were each the owners of mills situ-
ated upon the same stream; that of the defendant being above
that of the orator. There was a dam at the defendant's mill
which was used to store water for both mills, the orator drawing
water therefrom through the defendant's flume. In the fall of
1881 this dam had become so decayed as to necessitate its
rebuilding, and the defendant drew the water out of the pond
and began the construction of a new dam. The orator there-
upon brought this bill, alleging his right to take water from the
defendant's flume, and that the defendant had interfered with
this right, and praying for an injunction, which was granted.
The bill and injunction were served Nov. 3, 1881. At that
time the defendant had partially completed the construction of
the dam, and had allowed the pond to partly fill with water. He
understood from a reading of the injunction that he was forbid-

-den to proceed further with the work, or to draw down the water in the pond below its original level. Accordingly he allowed the pond to fill up, and a portion of the dam gave way owing to its incomplete condition.

The defendant filed an answer, claiming that he was properly proceeding to reconstruct the dam and that the orator's injunction was improperly granted ; further that the orator was under obligation to contribute to the maintenance of the dam, and that he should be compelled to so contribute in this suit. The defendant filed no cross-bill, but it was agreed that his answer should be treated as one. Upon these issues the case was sent to a master and was heard upon his report at the General Term, 1886. The facts above referred to fully appear in the report of that case. 59 Vt. 108. As a result of that hearing the following mandate was filed :

" It is ordered and adjudged that the orator under the grant has a right in the water power created by the dam and pond at the saw-mill proportionate to his relative right to draw water from the same for the use of his grist mill and is under the same proportionate duty to contribute to the support and maintenance of the dam and pond at the saw mill, so long as the orator and defendant continue to exercise their respective rights to the same; that the defendant has a like right and is under a like duty, but that if either party abandons the use of his right, his duty to contribute to the support and maintenance of the dam ceases; that the orator had no right to the injunction procured by him ; that the cause is remanded to the Court of Chancery to have under the mandate the rights of the parties as herein set forth defined, determined and decreed and to have a proper account taken, and contribution decreed for the part support of the dam and pond ; to have the damages if any to the defendant by the injunction ascertained and decreed, and upon such decree being passed, to dismiss the original bill with costs in this court to the defendant. The costs in the Court of Chancery are left to the discretion of that court.

JONATHAN ROSS, for the Court."

The present reference to the master was under this mandate.

The master found that the orator's right to the water was .2921 of the whole, and that he should contribute in that pro-

portion to the expense of rebuilding the dam. He found that the defendant actually expended $507.55 in reconstructing the dam, and allowe'd him the above proportion of that amount. With reference to this item the report found:

"It is claimed by the orator that this was an unnecessarily large expenditure for the building of that dam, that the dam ought to and could have been constructed for a much less sum, and that defendant ought to be allowed only what the dam ought to have cost instead of what it did in fact. Considering the circumstances and situation of the defendant as detailed by Mr. Dillingham in his report, and in view of some testimony introduced before this master, it is probable that the dam might have been built by a man of experience in such matters, with ample means and under favorable circumstances, for a less sum; but the master is unable from any testimony before him to determine for how much less a sum. The orator introduced the testimony of two witnesses, men of experience in such matters, who estimated the necessary cost of a dam at that place, as good as the present one, at $200; but these witnesses say that in their estimate they do not include the necessary expense of clearing away the old dam, nor the expense of the abutments of this dam, and did not give any estimate of these two items of expense. The master thinks this estimate too low for the cost of that part of the dam which the witnesses estimated. Considering the fact reported by Mr. Dillingham, (the master understands that any fact reported by Mr. Dillingham cannot be here controverted) that up to October 27 the defendant worked with reasonable expedition, and that if he had not been prevented as he was from completing it, he would with like expedition have required from 12 to 15 days to finish the work, it is found that the defendant built the dam as cheaply as he could under the circumstances, and in the condition he was placed; and the master is unable from the testimony to find for what sum it might have been built under other circumstances by a man of more experience and ability in such matters."

The master also allowed the defendant $205.64 for the damage done him by the breaking away of the dam Nov. 10, 1881, in consequence of the defendant allowing the pond to fill up after the service of the injunction upon him.

In the fall of 1882, while the original injunction was still in force, the defendant found it necessary to repair the dam, and on Nov. 8th drew the water out of the pond for that purpose. Nov. 9th the orator complained of the defendant for violating the injunction, and on the 13th the defendant was arrested and taken before the chancellor upon this complaint, who admitted him to bail, leaving the question of the violation of the injunction to be determined with the rest of the case. Dec. 15th, the defendant obtained a modification of the injunction allowing him to make the needed repairs. He claimed to recover as injunction damages for the loss of the use of his mill between the date of his arrest and the modification of the injunction. The master allowed this item subject to the opinion of the court upon the following facts:

"December 15th, defendant made an application in writing to the chancellor to have the injunction modified, which application is referred to. This application after it was drawn up was exhibited to the orator's solicitor, who immediately consented that the defendant might go on and repair the dam, as asked for in the application, and accordingly defendant did so. From the time of the arrest until this consent was given, there were thirty days that defendant might have enjoyed the use of his mill, and such use was fairly worth to him $3 per day. There was no testimony before the master, but it is argued by orator's counsel that defendant could have applied to the chancellor or to the orator for leave to go on and repair the dam, and have obtained that leave without delay, so that it was unnecessary for him to lie by thirty days; that he could have obtained leave to go on and repair the dam immediately after his arrest. Defendant was delayed three days by the arrest, and would be entitled to three days loss of the use of the mill, $9, in any event; and if the court is of the opinion that defendant ought to be denied the damages claimed in this item, by reason of the claim of the orator last above named, then this item should be allowed at $9. Aside from argument there was nothing before the master touching this matter but the record, which discloses the facts above recited."

*Wing & Fay*, for the orator.

*S. C. Shurtleff*, for the defendant.

The opinion of the court was delivered by

ROWELL, J. The master finds that the defendant built the dam as cheaply as he could in the circumstances and condition in which he was placed, but that it is probable that a man of experience in such matters, with ample means and in favorable circumstances, could have built it for less, but for how much less, he is unable to find from the testimony.

The orator claims that this problematical finding affords the true ground of determining the amount that he should contribute for building the dam, and that he is liable for nothing more, because all beyond was occasioned by the defendant's less favorable circumstances.

But the first finding is equivalent to saying that the defendant conducted the business in a diligent and prudent manner in the circumstances ; and this was all he was bound to do in order to entitle himself to contribution to the full amount of his expenditure. He stands in this respect like the innocent party to a broken contract, who can recover all the damage that, by diligence and prudence, he could not have prevented in the circumstances in which he was placed.

This is the rule laid down in *Eureka Marble Co.* v. *Windsor Manufacturing Co.*, 51 Vt. 170, and approved in *Wilson* v. *Greensboro*, 54 Vt. 542. But of course those circumstances must not have been rendered unfavorable for the prevention of damage by any fault in law of his.

As to the injunction damages. It is claimed that the dam gave way by reason of the defendant's fault in misconstruing the injunction, and that therefore he is entitled to nothing for repairing it. This court has already said that he complied with the injunction as he had a right to understand it. 59 Vt. 116. And when we consider that it is the spirit and not merely the letter of an injunction that must be obeyed, we still think that he had a right to understand the injunction as he did, and was not in legal fault in obeying it accordingly.

A party from whom obedience to an injunction is required should be allowed a fair latitude of construction, that he may the more surely avoid the risk of disobedience. If the party obtaining an injunction would be safe from the possible consequences of a construction by the other party that would enlarge the scope of it beyond what he intended it should be, let him see to it that it is made too plain to admit of such construction.

A few cases will illustrate the scope of the spirit of injunctions. Thus, an injunction against further proceedings in the collection of an execution enjoins the enforcement of the judgment itself. *Campbell* v. *Tarbell*, 55 Vt. 453. In *Partington* v. *Booth*, 3 Meriv. 148, an injunction against taking possession under a verdict obtained in ejectment was held to be violated by procuring an attachment for non-payment of the costs taxed. So in *The Grand Junction Canal Co.* v. *Dimes*, 17 Sim. 38, an injunction against obstructing the passage of boats along a canal was held to be violated by the bringing of fifteen suits on account of such passage.

The giving way of the dam being due to the defendant's obeying the injunction as he had a right to understand it, he can recover for rebuilding it and for the necessary loss of the use of his mill for the time required to rebuild. It is not found that he was guilty of any unnecessary delay in rebuilding, but on the contrary that he made such progress therein as he could, considering the season and the circumstances. Therefore, upon the findings, he is entitled to this class of damages as found by the master.

On Nov. 8, 1882, the defendant, without notice to the orator, drew all the water from the pond, in order to make needed repairs on the dam and the flume, in the making of which he was unnecessarily slow, as he might have made them in two days, but had not completed them on Nov. 13th, when he was arrested for violating the injunction, and thereby delayed three days, during which time he lost the use of the mill. On Dec. 15th he made written application to a chancellor for a modification of the injunction that would allow him to draw the water down and

shut it out of his flume, so that he could repair the gate that let water onto the wheel ; and on being shown the application, the orator's counsel at once consented to the modification asked for.

The defendant charges and was allowed for the loss of the use of the mill from the time of his arrest to the time of the modification of the injunction—30 days. Of this item it is sufficient to say that it does not appear why he lost the use of the mill longer than the three days he was delayed by the arrest,. nor clearly that he did in fact lose it longer, but it rather appears that he did not lose it longer, or certainly not so long as charged, for in his application for a modification, which is made a part of the master's report, he expressly says that "*while using his mill on Dec. 11th,*" his gate got out of place. etc. There are not sufficient facts reported to warrant the allowance of this. item, whatever other defense there may be to it, except for the three days' loss on account of the arrest.

*Decree reversed and cause remanded with mandate.*