## BERNARD D. JOSEPHSON v. FREMONT INDUSTRIES, INC., AND ANOTHER.

163 N. W. (2d) 297.

November 15, 1968—No. 41078.

*Erickson, Popham, Haik & Schnobrich, Wayne G. Popham,* and *Rolfe A. Worden,* for appellants.

*Brill & Brill,* for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Sheran, JJ.

ROGOSHESKE, JUSTICE.

The sole question raised on this appeal from an order denying defendants' post-trial motion is whether the evidence is sufficient to support a jury verdict awarding damages to plaintiff claimed to have been caused by improper restrictions imposed on him and his assignors by a temporary restraining order.

Defendant Fremont Industries, Inc., is in the business of developing, manufacturing, and selling industrial chemical detergents and other specialized chemical products. During late August and early September of 1961, plaintiff and two of his assignors, Roland H. Hicks and John R. Quist, joined together in organizing Chem Tech Corporation to compete with defendant. Plaintiff was to supply all of the capital, while Hicks, who had previously been employed by Fremont as a chemist, was to be the new company's chemist, and Quist, who had previously been employed by Fremont as a salesman, was to serve Chem Tech in the same capacity. Chem Tech then hired another of plaintiff's assignors, Gareth N. Iverson, who had also been employed by Fremont, as a salesman. Both Quist and Iverson had employment agreements with Fremont which contained covenants restricting them from engaging in any manner whatsoever in the soap or chemical cleaning-compound business in Minnesota or certain other states within 2 years after the termination of their employment with Fremont. After Chem Tech had been operating for about 6 weeks, Fremont learned of Chem Tech's existence and heard reports that it was using Fremont's secret chemical formulas to manufacture competing products. Fremont thereupon, on October 25, 1961, obtained an ex parte restraining order which comprehensively restrained Chem Tech, plaintiff, Quist, Iverson, and Hicks from, among other things, soliciting any of Fre-

mont's customers, and Quist, Iverson, and all persons acting under them from selling or dealing in or in any manner engaging in the manufacture or sale of soap products or chemical cleaning compounds.

Upon the issuance of this restraining order, the parties restrained suspended operations, having been advised by counsel that they could not proceed with their business until the restraining order could be challenged and possibly narrowed in scope. On January 4, 1962, after a hearing, the court ordered that a temporary injunction be issued which would eliminate any restriction on the activities of Quist and Iverson on the ground that the noncompetition covenants in their employment agreements were too broad and, therefore, illegal. The court also eliminated all of the restrictions on the solicitation of Fremont's customers.[1]

Chem Tech never resumed operations, and on about January 10, 1962, the individuals involved decided to go out of business entirely. Plaintiff took an assignment of the claims of those associated with him in Chem Tech and brought this action against defendants on the $10,000 restraining order bond for damages allegedly resulting from the wrongful restrictions imposed by the ex parte temporary restraining order and, independent of the bond, for damages resulting from malicious prosecution. At trial, plaintiff conceded that he was unable to prove that the restraining order caused any loss of profits since Chem Tech had not been in business long enough to establish a pattern of profits. The trial judge therefore limited plaintiff's possible recovery to (1) any loss on the sale of office and shop equipment caused by the difference in the scope of the two orders; (2) the reasonable rental expense of Chem Tech's building between October 25, 1961, and January 4, 1962; and (3) the reasonable value of the loss of time of Iverson and Quist caused by the temporary restraining order. The jury awarded the following damages: (1) $1,000 for the loss on the sale of office and shop equipment; (2) $241 for rental ex-

---

[1] When the action for injunctive relief came to trial, the parties offered no further evidence and a final judgment incorporating the terms of the temporary injunction was entered. In effect, plaintiff and his associates were enjoined from disclosing defendant's secret formulas, from using them, and from representing that they could duplicate them.

pense; and (3) $1,250 each for the loss of earnings of Quist and Iverson.

The trial court granted defendants' motion for a directed verdict on the issue of malicious prosecution, thereby limiting plaintiff's recovery to an action on the bond under Minn. St. 585.04. AMF Pinspotters, Inc. v. Harkins Bowling, Inc. 260 Minn. 499, 110 N. W. (2d) 348.

In order to recover damages on the bond in this type of case, plaintiff must establish that Fremont was not entitled to the restraints imposed by the ex parte order and that plaintiff or his assignors suffered damages proximately caused thereby.[2] Since the trial court in the injunction action determined that the restrictions on the activities of Quist and Iverson, as well as the restrictions on the solicitation of Fremont's customers, were improper, the question presented on this appeal narrows to the sufficiency of the evidence to sustain the verdict awarding damages as to each of the claims submitted.

I

*Loss on the sale of equipment.*

Plaintiff recovered $1,000 for loss upon sale of Chem Tech's office and manufacturing equipment. If supported by adequate evidence of causation, damages of this nature are recoverable. Adams v. National Auto. Ins. Co. 56 Cal. App. (2d) 905, 133 P. (2d) 657. Since this loss was occasioned by the decision to go out of business, plaintiff was required to prove a two-link chain of causation: (1) That the decision to go out of business was proximately caused by the suspension of Chem Tech's operations, and (2) that the restraining order was the proximate cause of the suspension of operations. Defendants argue that plaintiff failed to establish either of these links, thereby precluding his right to recover not only this loss but also his claims for rental expense and loss of earnings of his assignors for the 10-week period operations were suspended.

Plaintiff testified that Chem Tech went out of business because of accumulated indebtedness (largely for back salaries), inadequate capital,

---

[2] E. g., Hyler v. Wheeler, 240 S. C. 386, 126 S. E. (2d) 173, 95 A. L. R. (2d) 1182; State ex rel. Shatzer v. Freeport Coal Co. 145 W. Va. 343, 115 S. E. (2d) 164. See, Detroit Lakes Realty Co. v. McKenzie, 204 Minn. 490, 284 N. W. 60.

and the loss of customer goodwill—all due to the cessation in operations necessitated by the restraining order.

Defendants contend that the evidence conclusively shows that the decision to liquidate the business—made shortly after the temporary injunction was issued—was due solely to its provisions properly prohibiting the use of any of Fremont's formulas and requiring Chem Tech to keep detailed records of all formulas used in the manufacture and sale of products similar to Fremont's, which restrictions would not have prevented a resumption of operations were it not that defendant's formulas were in fact being used. Upon this record, the cause of liquidation was a question of fact for the jury, and since the evidence would support a decision either for or against the plaintiff, the jury's conclusion must be sustained.

Similarly, the jury's implicit finding that suspension of operations was caused by the comprehensive restrictions of the restraining order has sufficient evidentiary support.

Plaintiff testified that this order made it impossible for Chem Tech to do business since the parties restrained had been advised by counsel that they would face contempt penalties if they sold products, even inadvertently, to Fremont's customers.

One who is enjoined is required to obey an injunction implicitly both in letter and in spirit. Hatch v. National Surety Corp. 105 Mont. 245, 72 P. (2d) 107. If an injunction is ambiguous or imprecise, leaving the party enjoined in doubt as to his obligations, it is up to the party who procured the injunction to have it clarified. Webb v. Laird, 62 Vt. 448, 20 A. 599. If he fails to do so, he exposes himself to liability for damages caused by any reasonable interpretation of the injunction. See, Hatch v. National Surety Corp. *supra*; Webb v. Laird, *supra*. The terms of the restraining order in this case were broad and imprecise enough to permit the jury to conclude that the parties restrained could reasonably have interpreted it as requiring them to suspend all operations.

In spite of the fact that the order by its terms did not expressly require suspending operations, and in spite of testimony from which defendants argue that the business could have been continued by the simple expedient of securing a list of Fremont's customers, the jury's conclusion, im-

plicit in the verdict returned, that this loss upon sale of the equipment was proximately caused by the wrongful restriction imposed by the order is neither unreasonable nor lacking in evidentiary support.

Nor do we agree, as defendants argue, that the award of $1,000 was based on pure speculation. Without objection from defendants, the trial court instructed the jury that this item of claimed loss was to be measured by the difference in the equipment's fair market value at the time the wrongful restraint was imposed "compared to the value at the time of sale." See, Kolin v. Leitch, 351 Ill. App. 66, 113 N. E. (2d) 806. With respect to this, plaintiff testified that the equipment cost about $2,600 when acquired in the fall of 1961, was used for some 6 weeks, and was sold for $900 after plaintiff had made every effort to secure the highest price under the conditions of the market prevailing in the early part of 1962. Making due allowances for the depreciation of the equipment during its use and while the operations were suspended, the award made is within the permissible limits of the inferences which may be drawn from the testimony.

## II
### Rental expense.

Since plaintiff conceded that he was unable to prove any loss of profits as a result of the temporary restraining order, defendants argue that the award of $241 for rental expense cannot be sustained because rental expense is an item which must be deducted from gross income to compute profits, and hence it cannot be recovered unless loss of profits can be shown.

Stated differently, what defendants argue is that Chem Tech would have incurred this expense whether or not the restraining order was in effect, and since plaintiff cannot prove that Chem Tech would have had any income with which to offset this expense had the restraining order not been issued, it cannot fairly be said that the restraining order was the proximate cause of this loss. This argument has considerable logical appeal, but so far as we are aware, no authoritative support.

There is no dispute that this was an actual out-of-pocket expense. Chem Tech had a 1-year lease of the premises which required monthly rental payments. There was no way to avoid making these payments without

risking loss of possession and jeopardizing the hope of resuming operations after a hearing on the restraining order. In Wood v. State, 66 Md. 61, 5 A. 476, plaintiff was enjoined from moving his sawmill to another state. Six weeks later the injunction was dissolved. Plaintiff was permitted to recover for the salaries paid to persons under contract for the period during which he was restrained from moving the mill. These salary expenses are closely analogous to rental expenses in this case.[3]

Although a recovery of both rental expense and loss of profits during the period of imposed suspended operations would be clearly impermissible, we are not convinced that recovery of this item should be denied. The award is less than the amount paid by Chem Tech under the lease in recognition that some beneficial use was made of the leased premises. Further, in recognition of plaintiff's duty to mitigate damages, he did not pursue his claim for any other out-of-pocket expense. It would appear to be unjust to deny a right to recover this expense which this business enterprise in its formative stages was contractually bound to pay during the period the jury justifiably found it was, without fault on the part of the organizers, denied the full beneficial use of the plant while taking steps to mitigate damages.

## III

### *Loss of wages by Quist and Iverson.*

A person deprived of employment by reason of an improper injunction is entitled to recover for the loss suffered by being out of employment.[4] He must, however, have used due diligence to mitigate these damages by securing other employment.[5]

It cannot be denied that Quist and Iverson were rendered unemployed and unemployable in the chemical cleaning-compound business as a result of the exclusive provisions of the restraining order. Defendants' argument that Quist was a partner and therefore limited to recovery of loss

---

[3] Cf. also, I. T. S. Rubber Co. v. Tee Pee Rubber Co. (6 Cir.) 295 F. 479 (expense of keeping a business intact); Tyler Min. Co. v. Last Chance Min. Co. (9 Cir.) 90 F. 15 (expense of preservation of a mine).

[4] See, Muller v. Fern, 35 Iowa 420.

[5] Muller v. Fern, *supra*; Shepherd v. Gambill, 29 Ky. L. Rep. 1163, 96 S. W. 1104; Nansemond Timber Co. v. Rountree, 122 N. C. 45, 29 S. E. 61.

of profits might bar his recovery if the evidence compelled a finding that he was in fact a partner. However, the evidence of his relationship to Chem Tech, which was in the process of being incorporated and to which he made no capital contribution, permitted the jury to conclude that he had not yet achieved the status of an owner but was, like Iverson, an employee.

Contrary to defendants' contention, a person who, because of another's wrong, loses time from work is entitled to be compensated even though he was not working for a fixed wage or was unemployed at the time of the wrong. Blacktin v. McCarthy, 231 Minn. 303, 42 N. W. (2d) 818. Evidence of an employee's past earnings is relevant in assessing the amount of wages lost due to defendant's wrong. Blacktin v. McCarthy, *supra*; Flaugh v. Egan Chevrolet, Inc. 202 Minn. 615, 279 N. W. 582.

It is true that the testimony upon which the award of $1,250 to Quist and Iverson was based is, like the testimony bearing on the amount of the loss upon sale of the equipment and rental expense, very sketchy. However, defendants, primarily concerned with defeating plaintiff's efforts to prove causal connection, did not submit direct evidence challenging the amounts claimed, and we would not be justified in holding that the amounts fixed by the jury are based upon mere speculative assertions or that the evidence on any of the questions determined by the jury is so insufficient as to warrant setting aside the verdict.

Affirmed.