**HUBBARD BROADCASTING, INC., Respondent,**

v.

**C. A. LOESCHER, Appellant.**

**No. 50064.**

Supreme Court of Minnesota.

March 28, 1980.

Oppenheimer, Wolff, Foster, Shepard & Donnelly, Thomas P. Kane and Catherine A. Cella, St. Paul, for appellant.

Leonard, Street & Deinard, Sidney Barrows and George F. McGunnigle, Jr., Minneapolis, for respondent.

Heard before ROGOSHESKE, PETERSON and YETKA, JJ., and considered and decided by the court en banc.

## OPINION

SHERAN, Chief Justice.

Plaintiff brought suit to enjoin defendant from working for a competitor, alleging that such an action was precluded by a noncompetition clause in a prior employment contract. To this end, plaintiff obtained a temporary restraining order, a condition of which was the filing of a bond. After a full trial, the district court ruled in favor of the defendant, refusing to issue a permanent injunction and vacating the restraining order. After some further discovery, the defendant moved for an assessment of damages caused him by the tempo-

rary restraining order and for an order holding the surety on the injunction bond liable for those damages to the full amount of the bond. The trial court denied the motion, and the defendant now appeals that denial. We reverse and remand for an assessment of damages.

Sometime in January 1978, defendant resigned his employment at plaintiff's television station KSTP–TV to begin work at a competing station WCCO–TV in February. Contending that an alleged noncompetition clause in defendant's contract with plaintiff precluded local employment with a competitor so soon after termination, plaintiff brought suit for an injunction and, on February 2, 1978, obtained a temporary restraining order (TRO) to enjoin plaintiff from working for WCCO–TV.[1] As a condition of the TRO, plaintiff was required to file a $5,000 surety bond "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained * * *." The amount of the bond was raised to $7,500 on March 8, 1978.

The case proceeded to trial, and on May 11 the trial court found in favor of defendant on several grounds and refused to issue a permanent injunction. Accordingly, on May 16 the trial court dissolved the TRO.

On August 3, 1978, defendant brought a motion to assess damages caused him by the TRO and to recover on the injunction bond. The court denied the motion at that time because of its feeling that the record was inadequate. Additional discovery was thereafter made by deposing Ronald Handberg, Director of News and Public Affairs at WCCO–TV; Loren Lucke, Treasurer of

Midwest Radio-Television, Inc.; and defendant. This discovery showed that the amount representing defendant's salary for the period of the restraining order—February 5 to May 12, 1978—plus various items such as vacation accrual, guaranteed fees, and transportation expense, would clearly be well above the amount of the $7,500 bond.

Although defendant had several offers from agents of plaintiff to work for them during the TRO, he explained that he had refused them because of his contract with WCCO–TV and because "that would be a totally untenable kind of position to work for someone who is suing you." Defendant also did not seek other kinds of work but, instead, spent most of his time in court or at home.

On March 1, 1979, on the basis of these depositions, defendant again moved the court to assess damages and to hold the surety liable on the bond. On March 23, the trial court summarily denied the motion. This appeal by defendant followed.

The issues presented for appeal are:

1. May a trial court in its discretion deny recovery on an injunction bond of damages that were proximately caused by an erroneously-issued temporary restraining order on the ground that the suit was brought in good faith?

2. Did the defendant in this action fulfill his duty, if any, to mitigate damages?

3. Did the defendant in this action sustain recoverable monetary damages?

1. To recover on an injunction bond,[2] the one seeking damages must estab-

---

1. Defendant was specifically restrained
 * * * from engaging in any of the following acts:
 1. Selling, or contracting to sell, his services to Midwest Radio-Television, Inc., or WCCO–TV, or any other radio or television station except those operated by Plaintiff;
 2. Performing any services for Midwest Radio-Television, Inc., or WCCO–TV, or any other radio or television station except those operated by Plaintiff;
 3. Disclosing to any person or organization, including Midwest Radio-Television, Inc., and

WCCO–TV, any information obtained by him during his employment by Plaintiff concerning the news operations of KSTP–TV, WCCO–TV, or any other television station in the metropolitan area of St. Paul and Minneapolis.

2. The rule applicable to recovery on injunction bonds is Minn.R.Civ.P. 65.03, which reads in relevant part:
 (1) No temporary restraining order or temporary injunction shall be granted except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as

lish that he suffered damages proximately caused by a restraining order to which the opposing party was not entitled. *Josephson v. Fremont Indus. Inc.*, 282 Minn. 51, 54, 163 N.W.2d 297, 300 (1968).[3] It is clear that "loss suffered by being out of employment" due to an erroneously-issued temporary restraining order is compensable by recovery on an injunction bond. *Id.* at 57, 163 N.W.2d at 302.

The defendant asserted below that since he had clearly shown the existence of such loss, he should be permitted to recover. The trial court, however, denied the motion to assess and award damages on the bond. As with appellate review of other types of motions, the evidence is to be considered in the light most favorable to upholding the trial court ruling. Thus, if the trial court ruling is supportable on any legal theory, it should be sustained.

The plaintiff contends that the trial judge had discretion to deny recovery of damages on the injunction bond because the suit was brought in good faith and involved a close issue of fact and law. This view is based on dictum in *Russell v. Farley*, 105 U.S. 433, 26 L.Ed. 1060 (1881), in which the court stated that, *in the absence of a statute or rule to the contrary*, the recovery of damages under these circumstances was within the sound discretion of the trial court. *See generally* 7-Pt. 2 J. Moore Federal Practice ¶ 65.10[1], at 65–99 to 65–100 (2d ed. 1979). Unaccountably, even after the adoption of the Federal Rules of Civil Procedure,[4] which would appear to be "rule[s] to the contrary," certain federal courts continued to adhere to the position that the plaintiff's good faith is a defense to a motion to recover on an injunction bond. *See, e. g., H & R Block, Inc. v. McCaslin*, 541 F.2d 1098 (5th Cir. 1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977); *Page Communications Eng'rs, Inc. v. Froehlke*, 155 U.S.App.D.C. 1, 475 F.2d 994 (D.C.Cir.1973).[5]

▮ This position has been criticized on the ground that it defeats the underlying purpose of the injunction bond, which is to require the party seeking the temporary restraining order to pay for the harm caused by its erroneous granting without subjecting him to open or indeterminate liability.

The common-law approach has been to require some showing of blameworthy conduct on the part of the plaintiff, and despite statutes and Federal Rule of Civil Procedure 65(c), some state and federal courts seem to adhere to this view. On the other hand, if the requirement of a bond is analyzed as a means of protecting the status quo while imposing on the plaintiff, within known limits, the cost of his anticipatory judicial relief, the *bona fides* of the plaintiff's claim is irrelevant. The injunction bond, made imperative on the court by statute or rule, should establish the obligation to pay regardless of the difficulty of the legal question raised by the case. Furthermore, to eliminate effectively the factor of possible injury to the defendant from those to be considered in determining whether to grant interlocutory relief, the injunction bond

may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

(2) Whenever security is given in the form of a bond or other undertaking with one or more sureties, each surety submits himself to the jurisdiction of the court and irrevocably appoints the clerk of the court as his agent upon whom any papers affecting his liability on the bond or undertaking may be served. His liability may be enforced on motion without the necessity of an independent action. This rule is the same in all relevant respects as Fed.R.Civ.P. 65(c) and 65.1.

3. *Josephson* was decided under Minn.Stat. § 585.04 (1971) (repealed 1974). Although rule 65.03, *see* note 2 *supra*, has superseded § 585.-04, it has not materially changed the law, except to allow for assessment and award of damages on motion.

4. *See* note 2 *supra*.

5. This view of *Russell v. Farley*, however, has been questioned by the Tenth Circuit Court of Appeals. *See Monroe Div., Litton Business Sys., Inc. v. DeBari*, 562 F.2d 30 (10th Cir. 1977); *Atomic Oil Co. v. Bardahl Oil Co.*, 419 F.2d 1097 (10th Cir. 1969), *cert. denied*, 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970).

must assure the defendant of indemnity in every case in which the injunction issued erroneously.

Note, *Interlocutory Injunctions and the Injunction Bond,* 73 Harv.L.Rev. 333, 342 (1959) (footnotes omitted).

 The position of the federal courts also seems to be opposed to past Minnesota case law. As we stated in *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.,* 260 Minn. 499, 507, 110 N.W.2d 348, 353 (1961), "[w]hile damages from a wrongful issuance of an injunction may be determined in an injunction suit, they are recoverable (unless the writ was procured by malice) only by action on the bond." *Accord, Midland Loan Fin. Co. v. Temple Garage Co.,* 206 Minn. 434, 288 N.W. 853 (1939). By suggesting that damages over and above the amount of the bond can be obtained if the plaintiff's malice *can* be shown, this holding implies that the plaintiff's good faith should not be a consideration and should *not* have to be shown to collect under a bond. *See also Pearson v. Sigmund,* 263 Or. 626, 631, 503 P.2d 702, 704 (1972) ("the fact that plaintiff acted in good faith and with 'sufficient cause' in securing the preliminary injunction is no defense."); *accord, Kennedy v. Wackenhut Corp.,* 41 Or.App. 275, 599 P.2d 1126, *modified on other grounds,* 42 Or.App. 435, 601 P.2d 474 (1979).

We therefore hold that good faith in obtaining a temporary restraining order is no defense to recovery of damages on an injunction bond. .

 2. The plaintiff contends that the trial judge could have denied recovery on the bond because defendant failed to mitigate his damages. As in other contract cases,[6] the erroneously restrained employee should be required to attempt to mitigate damages by seeking other employment during the period of restraint. *Josephson v. Fremont Indus., Inc.,* 282 Minn. 51, 57, 163 N.W.2d 297, 302 (1968); Annot., 66 A.L.R.2d 1131 (1959); `Note, *Interlocutory Injunctions and the Injunction Bond,* 73 Harv.L. Rev. 333, 346 (1959).

In employment contract cases, mitigation of damages generally requires only that the restrained or discharged employee seek or accept local employment of a similar character. Thus, he need not seek or accept employment outside his line of business for which he has no special experience, *Bang v. Int'l Sisal Co.,* 212 Minn. 135, 141, 4 N.W.2d 113, 116 (1942); Annot., 44 A.L.R.3d 629, 641–43 (1972), or employment at a great distance, Annot., 44 A.L.R.3d at 647–49, or employment that is more menial, *Cooper v. Stronge & Warner Co.,* 111 Minn. 177, 179, 126 N.W. 541, 541 (1910); Annot., 44 A.L. R.3d at 644–46. There is thus no support for the plaintiff's claim that the duty to mitigate damages required defendant to look for work other than locally in the field of broadcasting, and since he was enjoined from such local employment, his duty was discharged. "[W]hen mitigation would mean violating the injunction, even if the violation is suggested by the plaintiff, there is no duty to mitigate."[7] Note, *Interlocutory Injunctions and the Injunction Bond,* 73 Harv.L.Rev. 333, 346 (1959).

 The plaintiff argues, however, that defendant did have a local opportunity for

---

**6.** The fundamental theoretical basis of an injunction bond is contract; it is essentially a contract by a plaintiff seeking a temporary restraining order to indemnify the defendant for any damages caused thereby.

**7.** *Economy Gas Co. v. Bradley,* 472 S.W.2d 878 (Mo.App.1971), a case with superficially similar facts in which the temporarily enjoined party was denied recovery on an injunction bond on the ground that he failed to mitigate damages is distinguishable. The *Bradley* court, noting that the burden to produce evidence was on the one seeking to collect, found that there was no evidence at all (1) whether the enjoined party had sought outside employment or (2) whether he had received it. In other words, there was no evidence that the party had not worked somewhere else and been paid wages. The court was thus obviously concerned with the possibility that the enjoined party might collect twice if he had in fact been employed. By contrast, in the instant case, the evidence is apparently uncontested that defendant did not have outside employment during the period of the TRO, and did not have outside "wages" from an "employer." *See generally* Note, *Damages Recoverable on Injunction Bonds in Missouri,* 44 Mo.L.Rev. 269, 290–91 (1979).

similar employment with plaintiff which defendant refused to take. Defendant argues in response that he could not reasonably be required to work for an employer actively engaged in litigation against him. We agree with defendant. This view is consistent with the rule in wrongful discharge cases that the wrongfully discharged employee is not required to accept an offer of re-employment in mitigation of damages "where further association between the parties would be offensive or degrading to the employee because of the wrongful act of the employer * * *." *Schisler v. Perfection Milker Co.,* 193 Minn. 160, 161, 258 N.W. 17, 17 (1934); *Cf.* 11 S. Williston Contracts § 1359, at 307 (3d ed. 1968) ("In the application of this rule [on mitigation of damages] to a wrongfully discharged employee, there is the special feature that human feelings must be taken into account."). *See generally* Annot., 44 A.L. R.3d 629, 649–51 (1972). We hold that as a matter of law it would be offensive and degrading to an employee to require him to mitigate his damages by accepting re-employment with his former employer when, as here, the employer has obtained a temporary restraining order to which he is not entitled that enjoined the employee from all other local employment of a similar nature.

3. Plaintiff argues that defendant sustained no monetary damages because he had received the amount of his salary in "loans" from WCCO–TV. These sums, for which defendant gave demand notes in return, were in the amount of $2,000 on March 8, 1978, $2,000 on March 30, 1978 and $7,500 on May 25, 1978 for a total of $11,-500. Defendant did not receive any regular payroll check from WCCO–TV until May 27, 1978.

There were apparently discussions between Ronald Handberg, Director of News and Public Affairs at WCCO–TV, and W. T. Doar, the President of Midwest Radio-Television, Inc., that $4,000 of these loans might be forgiven because defendant had never received moving expenses from WCCO–TV. Defendant testified that Handberg told him that WCCO–TV would "eat the 4,000." Another possible reason for the discussed forgiveness was that defendant knew that he could obtain at most $7,500 in damages on the bond. Handberg testified, however, that there had been no final agreement as to the forgiveness of the $4,000, and, as far as the testimony indicates, the demand notes are still in WCCO–TV's possession.

It is clear that everyone at WCCO–TV thought that collection on the bond would be automatic if defendant prevailed in the main action and that WCCO–TV would be repaid by defendant from the bond proceeds. In a letter to Handberg, defendant ostensibly assigned his interest in the bond to WCCO–TV. Moreover, defendant testified that, if the motion to collect on the bond were denied, he would have an absolute obligation to repay WCCO–TV on the $7,500 note.

Plaintiff argues that, on these facts, the trial judge could reasonably have found that the "loans" would be forgiven by WCCO–TV and that plaintiff would sustain no loss even if he were not permitted to recover on the bond. Defendant argues, however, that, even if this were true, the payments were from a collateral source and should not be considered in assessing monetary compensation for loss of wages.

■ The collateral source rule provides in general that compensation received from a third party will not diminish recovery against a wrongdoer. Because its purpose is punitive, this doctrine has generally been applied only to tort cases. Although the wronged party may be overcompensated, the collateral source rule requires that a wrongdoer pay for the full extent of the damages he has caused. *See* Note, *Unreason in the Law of Damages: The Collateral Source Rule,* 77 Harv.L.Rev. 741 (1964).

■ Courts have been leery of invoking the collateral source rule in contract cases for just this reason. As the court stated in *Patent Scaffolding Co. v. William Simpson Constr. Co.,* 256 Cal.App.2d 506, 511, 64 Cal.Rptr. 187, 191 (1967):

The collateral source rule is punitive; contractual damages are compensatory.

The collateral source rule, if applied to an action based on breach of contract, would violate the contractual damage rule that no one shall profit more from the breach of an obligation than from its full performance.

Nevertheless, there is dictum in a Minnesota case that indicates that the rule may be invoked in a contract case under the proper circumstances. *Collins v. Farmers Ins. Exch.*, 271 Minn. 239, 245, 135 N.W.2d 503, 507 (1965); *accord,* D. Dobbs, Remedies, § 3.6, at 185 (1973).

Moreover, there is strong, if not overwhelming, evidence that in this case defendant would *not* be overcompensated for his loss of salary and benefits if he were allowed to recover on the injunction bond. Plaintiff appears to concede as much in its brief when it states, "the evidence is compelling that any recovery by [defendant] against the injunction bond will go directly into the coffers of Midwest, the real party in interest." If the sum recovered on the bond would go to WCCO–TV and not to defendant, then defendant would retain at most only the original "loans" from WCCO–TV in compensation for his loss of salary and benefits. To the extent that allowing recovery in this case would not overcompensate the defendant, the major criticisms of the collateral source rule are not applicable.

Since the defendant has shown that he has suffered damages by being out of employment due to the erroneously-issued temporary restraining order, and, as a matter of law, there was no basis for refusing to assess and award such damages on the injunction bond, we reverse and remand to the trial court for an assessment of damages and an award on the bond to the extent that the award would not provide overcompensation to the defendant.

Reversed and remanded.

KELLY, J., took no part in the consideration or decision of this case.