TODD, Justice.
Bruce Hueper, a minor, was seriously injured in an auto accident. A lawsuit was commenced on his behalf for his injuries and his father brought action for his medical expenses. The trial was bifurcated as to liability and damages. Following the damages trial, the court allowed the father full recovery of the reasonable value of medical expenses, including hospital services furnished without charge, under the collateral source rule. The trial court also allowed interest on the amount of the defendants’ insurance policy from the date of the liability trial. We affirm as to the father’s claim for medical expenses and reverse as to the allowance of interest.
The facts relevant to this appeal were stipulated to by the parties. On August 15, 1974 a truck owned by Arland Gregor and operated by Emil Hueper collided with a truck owned by appellant Goodrich and operated by appellant Neubauer, resulting in severe injuries to Bruce Hueper, a minor, who was a passenger in the Gregor truck. Sharon Hueper, Bruce’s mother and natural guardian, commenced a personal injury action on his behalf against appellants Goodrich and Neubauer who in turn impleaded Arland Gregor and Emil Hueper. Emil and Sharon Hueper commenced a separate action against Goodrich and Neubauer. The Ford Motor Company was impleaded by Goodrich and Neubauer and was subsequently sued directly by Bruce Hueper and Emil and Sharon Hueper. The question of the liability of all parties except Ford Motor Company was tried in Faribault County District Court before District Court Judge Milton Mason and a jury on February 17, 18, 19 and 20, 1976. The jury returned a verdict finding that defendants Neubauer and Goodrich were 85% liable for Bruce Hueper’s injuries and that Emil Hueper and Arland Gregor were 15% liable for those injuries. A trial on the issue of damages was held on the 22nd through the 25th of July, 1980 in Faribault County before District Court Judge Harvey Holtan and a jury. The jury awarded Bruce Hueper judgment against the defendants in the amount of $600,215 and Emil Hueper judgment against the defendants in the amount of $37,270.
During the trial of the damage issues, State Automobile and Casualty Underwriters settled the claims of Emil and Sharon Hueper against Goodrich and Neubauer for $85,000. The settlement did not include damages sustained by Emil Hueper with respect to Bruce Hueper while Bruce was a minor.
*826 The jury award of $37,270 to Emil Hueper was for special damages arising out of medical and hospital care provided to his son Bruce before Bruce’s 18th birthday. Of that sum, $25,977 reflected the reasonable value of the medical care provided to Bruce Hueper while he was a patient at Shriner’s Hospital. A physician at Shriner’s Hospital testified that it was the policy of the hospital not to charge patients for care provided or to accept insurance proceeds from a third party.
In a post-trial motion, Goodrich and Neu-bauer requested the trial court to reduce Emil Hueper’s recovery by the amount of the value of services provided by Shriner’s Hospital and to rule that no interest should be paid on Bruce Hueper’s verdict prior to the date of the jury’s award of damages (July 25, 1980). In an order dated October 30,1980 the trial court denied both post-trial motions. The court found that the collateral source rule allowed Emil Hueper to recover the reasonable value of the medical care given to his minor son, although that care had been provided free of charge by a charitable hospital. It also found that because liability had been determined and the amount of damages was certain to at least reach, if not exceed the amount of the $100,000 policy held by the defendants, Bruce Hueper could receive interest on the $100,000 from the date that liability was determined (January 20, 1976) to the date that a verdict was reached on damages (July 25, 1980). The court noted that the policy amount could have been paid into court under Rule 67 of the Rules of Civil Procedure but was not. It is from this order that the parties appealed.
The issues presented are:
I. Did the trial court err in applying the collateral source rule to allow the father of a minor son to recover the reasonable value of medical and hospital services provided free of charge by a charitable institution?
II. Did the trial court err in awarding interest on the amount of insurance coverage from the date of the determination of liability to the date of the determination of damages?
1. Under the collateral source rule, a plaintiff may recover damages from a tortfeasor, although the plaintiff has received money or services in reparation of the injury from a source other than the tortfeasor. Maxwell, The Collateral Source Rule in the American Law of Damages, 46 Minn.L.Rev. 669, 670-71 (1962). The benefit conferred on the injured person from the collateral source is not credited against the tortfeasor’s liability, although it may partially or completely reimburse the plaintiff for his injuries. Restatement (Second) of Torts, § 920A (1979). The rule has been applied where the plaintiff has received insurance proceeds, employment benefits, gifts of money or medical services, welfare benefits or tax advantages. Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harvard L.Rev. 741, 742-43 (1964).
Various justifications have been given for applying the rule. Where the plaintiff has paid for the benefit such as by buying an insurance policy, the rationale is that the plaintiff should be reimbursed and the tort-feasor should not get a windfall. See Restatement (Second) of Torts, § 920A, comment b (1979). If the benefit is a gift from a third party, such as an employer, a relative or a charity, the argument is that the donor intended that the injured party receive the gift and not that the benefit be shifted to the tortfeasor. See Note, supra at 751. Other reasons for applying the rule are that the wrongdoer should be punished by being made to take full responsibility for his negligence and that the plaintiff will be more fully compensated if he is allowed to recover from the tortfeasor. See id. at 748-50.
Minnesota has adopted the collateral source rule and the cases applying the rule have relied upon the policy reasons discussed above. See Hubbard Broadcasting, Inc. v. Loescher, 291 N.W.2d 216 (1980) (purpose of rule is punitive); Van Tassel v. Horace Mann Ins. Co., 296 Minn. 181, 207 N.W.2d 348 (1973) (insurance paid for by plaintiff should not benefit tortfeasor); *827 Local 1140, Int’l Union of Elec., Radio & Mach. Workers, 282 Minn. 455, 165 N.W.2d 234 (1969) (benefit of reimbursement by hospital when blood was replaced by donor group to which injured plaintiffs belonged goes to plaintiffs.
In this case the trial court correctly followed Minnesota case law in applying the collateral source rule. Emil Hueper, as the father of Bruce Hueper, a minor, had a right to recover special damages for medical expenses from the defendants. Faber v. Roelofs, 298 Minn. 16, 212 N.W.2d 856 (1973); Dettinger v. Uleberg, 171 Minn. 81, 213 N.W. 377 (1927). He could still recover the reasonable value of those medical expenses although Shriner’s Hospital did not charge the Huepers anything for Bruce’s medical care. In Dahlin v. Kron, 232 Minn. 312, 45 N.W.2d 833 (1950), this court held that the plaintiff could recover the reasonable value of medical services provided by a hospital even though those services were rendered gratuitously by the hospital.
We are being asked to review the policy considerations involved in our long-standing support of the collateral source rule. The facts of this case present this issue in a light most favorable to those advocating abandonment of the collateral source rule. However, the rule in its application is broader than the facts of this case. To begin limiting the application of the rule is to invite an unlimited flow of litigation seeking ad hoe determinations with the confusion that would necessarily follow. Considering the rule in its broadest sense and reviewing all of the considerations involved in such an evaluation, we decline to abandon the collateral source rule or to create limitations on its application.
2. The trial court’s allowance of interest on the amount of the defendants’ insurance policy from the date of the determination of liability is contrary to the principles we have enunciated.
In determining whether a plaintiff is entitled to interest on the verdict, we have distinguished between liquidated and unliquidated claims, allowing interest in the case of unliquidated claims only where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depended upon contingencies or upon jury discretion (as in actions for personal injury or injury to reputation).
Potter v. Hartzell Propeller, Inc., 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971). Here the damages, no matter how large they may be, are unliquidated. The fact that the plaintiff’s injuries were such that his recovery was likely to exceed the amount of insurance coverage does not make the damages “readily ascertainable” for purposes of awarding prejudgment interest. To consider information such as insurance coverage would emasculate the rule. Interest shall be allowed only from and after July 25, 1980, the date the jury returned its verdict and the damages became liquidated.
Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.