**DULUTH STEAM COOPERATIVE ASSOCIATION, Respondent,**

v.

**Eric J. RINGSRED, Appellant.**

**No. C6–94–59.**

Court of Appeals of Minnesota.

July 12, 1994.

David R. Oberstar, Stephanie A. Ball, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, for respondent.

David P. Sullivan, Sullivan & Setterlund, Ltd., Duluth, for appellant.

Considered and decided by RANDALL, P.J., and NORTON and KLAPHAKE, JJ.

## OPINION

NORTON, Judge.

Appellant contends the district court erred in granting summary judgment for respon-

___

1. This amount was reduced by a $100 deductible to arrive at $34,001 in the subrogation agree-

dent on his claim for damages arising out of an underground explosion and steam leak. Appellant's claim against respondent tortfeasor is distinct from other claims he subrogated to his casualty insurer. We reverse and remand for trial.

## FACTS

Respondent Duluth Steam Cooperative Association (Co-op) owns and maintains a system of steam pipes beneath the streets of downtown Duluth. Appellant Eric Ringsred owns property along Superior Street in Duluth. On May 31, 1985, a steam explosion occurred beneath Superior Street. As a result of the explosion, steam escaped the pipelines and caused structural damage to walls and fixtures of Ringsred's buildings, damage to the insulation on the basement steam pipes, and damage to the contents of the buildings. Ringsred claimed $50,753 in damages to the buildings and the contents, with approximately $40,000 in additional damage to the asbestos steam pipe insulation which Ringsred's insurance policy did not cover.

On July 31, 1985, Ringsred filled out a Sworn Statement in Proof of Loss that claimed $50,753 in loss and damage. On May 6, 1986, Ringsred negotiated a subrogation agreement with General Casualty Insurance Company for $34,001. In conjunction with that agreement, Ringsred completed another sworn statement claiming $34,101 [1] in total loss and damage. The Article of Subrogation contained the following provision:

NOW THEREFORE, in consideration of the sum of $34,001.00, contemporaneously paid to the insured, the undersigned hereby sells, transfers, sets over unto, and subrogates to the said General Casualty Insurance Company all of its rights, title, interest, claims, and causes of action, including any note or notes, mortgage or mortgages, claim for debt, damage or negligence, to the amount above mentioned had or held by the undersigned against any person, firm or corporation under, by virtue of, or in any wise connected with the property described in said insurance policy

ment.

above mentioned, the loss suffered to said property as the result of the peril above mentioned or the consideration above described paid to the undersigned.

\* \* \* \* \* \*

The said Insurance Company above named is hereby authorized and empowered by the undersigned to sue, foreclose, compromise, or settle in its own name or otherwise as to any and all rights and interest hereby conveyed, and said Insurance Company is hereby fully substituted in the place of the undersigned and subrogated to all of the rights of the undersigned in the premises to the amount so paid, it being understood, however, that any action taken by said Insurance Company shall be without cost to the undersigned.

In an action that the Co-op originally commenced, Ringsred brought a counterclaim for damages to the property that had not been covered by the insurance policy. The district court granted summary judgment on this counterclaim in favor of the Co-op on the basis of the subrogation agreement that Ringsred entered with General Casualty.

## ISSUE

Does the subrogation agreement between Ringsred and General Casualty preclude Ringsred from bringing an action against the tortfeasor, the Co-op, for damages that were not covered under the insurance policy?

## ANALYSIS

■ On appeal from summary judgment, we must determine whether any issues of material fact exist and whether the district court erred in its application of the law. *City of Virginia v. Northland Office Properties, Ltd.*, 465 N.W.2d 424, 427 (Minn.App.1991), *pet. for rev. denied* (Minn. Apr. 18, 1991). This court conducts de novo review of questions of law. *Harford v. University of Minn.*, 494 N.W.2d 903, 906 (Minn.App.1993), *pet. for rev. denied* (Minn. Mar. 30, 1993).

■ Ringsred contends the common law collateral source rule protects and preserves his claim against the Co-op. We agree.

■ For the record, we note that this common law doctrine is distinct from the statutory collateral source rule codified at Minn.Stat. § 548.36 (1992). That statute defines "collateral sources" as "payments related to the injury or disability in question made to the plaintiff" pursuant to any of the following authorities: a disability or workers' compensation act; health, accident/sickness, or auto accident insurance; liability insurance that provides health benefits; a contract by a group to cover costs of hospital and health care services; or an employer's wage continuation plan. *Id.*, subd. 1. From the plain language of the statute, the statutory collateral source rule applies only to cases involving physical injury to the person. *See, e.g., Bruwelheide v. Garvey*, 465 N.W.2d 96, 98–99 (Minn.App.1991) (sick leave benefits not collateral source under Minn.Stat. § 548.36), *pet. for rev. denied* (Minn. Mar. 15, 1991). Given that the present case involves property damage, not personal injury, the statutory collateral source rule does not apply here.

■ The common law collateral source rule provides that the compensation a plaintiff receives from a third party "will not diminish recovery against a wrongdoer." *Hubbard Broadcasting, Inc. v. Loescher*, 291 N.W.2d 216, 222 (Minn.1980). Specifically:

Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

Restatement (Second) of Torts, § 920A(2) (1979). This rule acknowledges that the "tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives." *Id.*, comment b. Furthermore, "[t]he law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him." *Id.* Minnesota courts have recognized this rule in *Hueper v. Goodrich*, 314 N.W.2d 828, 830 (Minn.1982) and *Hubbard Broadcasting*, 291 N.W.2d at 222.

■ In *Hueper*, 314 N.W.2d at 830, the parents of a child injured in an automobile accident brought a personal injury action

against the tortfeasors. In addition to a damage award for the child, the jury awarded the father $37,270 in special damages for the reasonable value of the child's medical care at Shriner's Hospital. The tortfeasors objected because a Shriner's physician had testified at trial that the hospital had a policy not to charge patients for care provided. The court upheld the damage award, based upon the collateral source rule, despite the father's double recovery. *Id.* at 830–31.

Ringsred presents a stronger case for the common law collateral source rule than the parents in *Hueper*. Ringsred does not seek double recovery for the exact same loss; he seeks damages from two sources for related, but separate, losses. The settlement he received from General Casualty covered the majority of his property damage, except for the steam pipe insulation damage which the policy specifically excluded. Ringsred now seeks to preserve his counterclaim against the Co-op for the uninsured costs of asbestos pipe insulation repair and clean-up. Furthermore, the settlement agreement over damages covered by the policy does not foreclose Ringsred from raising this claim for damages that were not included in that agreement. By the language of the agreement, Ringsred subrogated only those claims covered by the $34,001 settlement with General Casualty. When Ringsred agreed to subrogate his claims "to the amount above mentioned," that $34,001 amount did not include damages to the asbestos pipe insulation since the policy excluded coverage on that item.

The Co-op was allegedly responsible for the explosion and damage to Ringsred's buildings. As the case now stands, Ringsred must cover all the steam pipe insulation costs out of his own pocket while the Co-op, the tortfeasor, gets the windfall by escaping liability for these damages. Where, as here, Ringsred has paid for insurance coverage, "the rationale is that the plaintiff [Ringsred] should be reimbursed and the tortfeasor should not get the windfall." *Hueper,* 314 N.W.2d at 830.

## DECISION

The district court erred when it concluded that all claims were settled and all interests

subrogated to General Casualty. The settlement agreement Ringsred entered with General Casualty does not preclude him from asserting this claim for separate damages against the Co-op. Ringsred has a valid claim against the Co-op and, under the common law collateral source rule, he should be allowed to pursue it.

**Reversed and remanded.**