Allen VanLANDSCHOOT,
et al., Appellants,

v.

Brian WALSH, Respondent.

No. C3–02–1278.

Court of Appeals of Minnesota.

April 29, 2003.

Patrick M. Krueger, Virginia J. Knudson, Borden, Steinbauer & Krueger, P.A., Brainerd, MN, for appellants.

John H. Erickson, Erickson and Pearson Law Offices, Brainerd, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, HUDSON, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

Appellants sued respondent for property damage to appellants' commercial building. After a bench trial to determine damages, the trial court ordered judgment. Respondent then brought a post-judgment motion to reduce the judgment by the amount of a payment that respondent's insurer had made to appellants' insurer. This payment was to reimburse appellants' insurer for a payment appellants' insurer had previously made to appellants. The district court granted the motion and reduced the amount of the judgment. On appeal, appellants argue that (1) respondents' motion to reduce the amount of the judgment was not timely, and (2) the collateral-source rule applied, and under that rule, the pay-

ment is not to reduce respondent's liability. Respondent, in his notice of review, challenges the district court's determination of damages. We affirm the district court in all respects. Specifically, we conclude that, in case of property damage, a payment by a tortfeasor's insurer directly or indirectly to the injured party serves to offset the tortfeasor's liability.

## FACTS

On June 7, 2000, a fire damaged a commercial building owned by appellants Allen and Laura VanLandschoot. The VanLandschoots filed the present action against respondent Brian Walsh, and the parties stipulated that Walsh, a welder, negligently started the fire and is liable for damage to the building.

The only issue before the district court in the bench trial was the amount of damages. After closing the record, the trial court issued its findings and order for judgment, concluding that the VanLandschoots sustained $68,000 in damages and could recover prejudgment interest, costs, and disbursements.

Both parties brought post-trial motions. The VanLandschoots moved to amend the findings. Walsh made several motions, including a motion to deduct from the judgment the amount that his insurer paid to VanLandschoots' insurer. In support of his motion, Walsh, for the first time in the proceeding, made the claim that his insurer paid $46,439.42 to the VanLandschoots' insurer and that this payment was reimbursement for a payment the VanLandschoots had received from their insurer.

The district court granted Walsh's motion to reduce the judgment by the amount of the payment made by his insurer but denied all other motions. In its memoran-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

dum, the court stated that Walsh's failure to present the evidence of payment at trial did not preclude him from asserting his claim after trial.

The VanLandschoots appeal from the order and amended judgment. Walsh filed a notice of review of the court's damages decision.

### ISSUES

I.  Did the district court properly grant a post-trial motion to reduce the damage award by the amount that the tortfeasor's insurer paid to the injured parties' insurer?

II.  Was the district court's determination of damages manifestly and palpably contrary to the evidence?

### ANALYSIS

#### I.

The VanLandschoots contend that the post-trial court abused its discretion by reducing the judgment by the amount that Walsh's insurer paid to their insurer. When the underlying facts of a case are undisputed, an appellate court will review de novo the district court's application of the law. *Dean v. Am. Family Mut. Ins. Co.*, 535 N.W.2d 342, 343 (Minn.1995).

At the outset, we note that the *common-law* collateral-source doctrine, which is under discussion in this case, is distinct from the collateral-source *statute* found at Minn. Stat. § 548.36 (2002). *Duluth Steam Co-op. Ass'n v. Ringsred*, 519 N.W.2d 215, 217 (Minn.App.1994). The statute only controls personal injury cases, while the common-law rule controls those cases involving property damage. *Id.*

*A.  Timeliness of Walsh's Motion to Reduce the Award.*

■ The VanLandschoots first argue that because Walsh did not present evidence of payment as an affirmative defense during trial, the post-trial court improperly admitted evidence of such payment after the verdict. *See* Minn. R. Civ. P. 8.03 (listing payment as an affirmative defense). We disagree.

Although the collateral-source statute does not control in cases involving property damage, in that statute the legislature recognized the propriety of bringing motions for collateral-source reduction after the verdict. Minn.Stat. § 548.36, subd. 2 (2002); *see Schmuckler v. Creurer*, 585 N.W.2d 425, 428 (Minn.App.1998) (post-trial collateral-source motion), *review denied* (Minn. Dec. 22, 1998).

Moreover, even before the 1986 enactment of the collateral-source statute, the supreme court showed no apparent difficulty dealing with a collateral-source issue in a post-trial motion. *Hueper v. Goodrich*, 314 N.W.2d 828, 830 (Minn.1982). Other jurisdictions have explicitly held that such motions may properly be brought after the verdict. *E.g., Fire & Cas. Ins. Co. of Conn. v. Sealey*, 810 So.2d 988, 992 (Fla.Dist.Ct.App.2002) (stating that a party may properly file a post-verdict motion to account for collateral sources); *Poteet v. Sauter*, 136 Md.App. 383, 766 A.2d 150, 166 (2001) (stating that a court may only consider collateral-source evidence in post-verdict proceedings); *Hoffmann v. S.J. Hawk, Inc.*, 177 Misc.2d 305, 676 N.Y.S.2d 448, 450 (N.Y.Sup.Ct. 1998) (holding that "[t]here is no question that the defendants are entitled to a post verdict hearing" for collateral-source issues).

Consequently, we conclude that the district court acted properly when it considered Walsh's request to reduce the judgment in a post-trial motion.

*B.  Application of the Collateral–Source Rule*

■ Initially, we note that although Walsh's insurer did not make a payment

directly to the VanLandschoots, the payment was made to the VanLandschoots' insurer as a reimbursement for a payment that had previously been made to the Van-Landschoots by their insurer. In effect, the VanLandschoots received payment from Walsh's insurer, and this case stands in the same posture as if the payment had gone directly to the VanLandschoots.

The VanLandschoots argue that the collateral-source rule should apply and the judgment should not be reduced by the amount that Walsh's insurer paid to their insurer. Under the collateral-source rule, "in general, * * * compensation received from a third party will not diminish recovery against a wrongdoer." *Hubbard Broad., Inc. v. Loescher*, 291 N.W.2d 216, 222 (Minn.1980). The rule is embodied in the Restatement (Second) of Torts, § 920A(2) (1979), which the Minnesota courts have expressly adopted. *Hueper*, 314 N.W.2d at 830 (Minn.1982); *Ringsred*, 519 N.W.2d at 217.

■ The collateral-source rule, however, applies only to a payment that comes from a source other than the tortfeasor or someone acting for the tortfeasor. Restatement (Second) of Torts § 920A(2) (1979). If the payment comes from the tortfeasor, or someone acting for the tortfeasor, the rule does not apply, and such payments will reduce the tortfeasor's liability.

A payment made *by a tortfeasor or by a person acting for him* to a person whom he has injured *is credited against his tort liability*, as are payments made by another who is, or believes he is, subject to the same tort liability.

*Id.* at § 920A(1) (emphasis added). In the present case, the payment to the Van-Landschoots came, in effect, from Walsh's insurer, and the comment to the Restatement notes that such payments serve to reduce the tortfeasor's liability:

If a tort defendant makes a payment toward his tort liability, it of course has the effect of reducing that liability. *This is also true of payments made under an insurance policy that is maintained by the defendant*, whether made under a liability provision or without regard to liability * * *.

*Id.* at cmt. a (emphasis added).

As we have noted, the Minnesota courts have adopted the collateral-source rule, which is set out in subsection (2) of the Restatement § 920A. *Ringsred*, 519 N.W.2d at 217. We believe that it is equally appropriate to adopt the rule set out in subsection (1) of § 920A, which credits the tortfeasor for payments made by the tortfeasor's insurer. Sound reasons support the adoption of such a rule. First, the rule encourages potential tortfeasors to obtain liability insurance, which is actually to the benefit of injured parties, because it guarantees that judgments will be collectible, at least to the extent of the policy's limits. Second, not to adopt the rule would be to punish the prudent person who obtains liability insurance and pays for it, but is left exposed to the same liability as someone who does not have insurance. And finally, to leave the insured exposed to full liability would defeat the entire purpose of obtaining liability insurance. In this connection, although we assume that the tortfeasor's insurer would protect the tortfeasor by obtaining a full release upon payment, the present case illustrates that this does not always happen.

By the same token, most of the justifications for application of the collateral-source rule do not apply to cases such as the present case. The rationale for the collateral-source rule was succinctly set out by Justice Simonett in his dissent in *Hueper*:

(1) the injured party has paid for the collateral source benefit and deserves what he paid for; (2) a collateral source benefit is sometimes a gift intended by the donor to benefit the injured donee and not the tortfeasor; (3) only cumulation of collateral source benefits with amounts assessed the tortfeasor will fully compensate the injured person; (4) a tortfeasor deserves to be punished, a purpose which would be foiled if he were relieved from "total responsibility" for his wrong; and (5) since a windfall payment is inevitable, better it go to the injured person than the tortfeasor.

*Hueper*, 314 N.W.2d at 832 (Simonett, J. dissenting).

But none of these reasons are persuasive when applied to cases, such as the present case, where the tortfeasors' insurer makes the payment to the injured party. (1) The injured party does not pay for the benefit; the insurance is obtained and paid for by the tortfeasor. (2) The payment is not intended as a gift to the injured party; the insurance policy and payments made under it are specifically intended to protect, and thus benefit, the tortfeasor. (3) As to the argument that the injured party will only be fully compensated by reaping the additional collateral-source benefits, such an argument assumes that the entire tort system fails, since the party should be fully compensated by the jury's verdict. (4) As to punishing the tortfeasor, we question whether a person prudent enough to obtain insurance is in need of punishment; but in any event, the tortfeasor may be met with higher rates or even by the cancellation of the policy. (5) Finally, as to the issue of which party is to receive the "windfall," we question whether, under modern insurance practices, the persons involved consider that anyone has obtained a windfall: The injured party is made whole, and the tortfeasor obtains the protection he or she

purchased. In any event, to the extent that this argument is valid, it is outweighed by the reasons in support of the rule we adopt.

■ We therefore adopt the rule set out in § 920A (1) of the Restatement and hold that, in property-damage cases, where the tortfeasor's insurer makes a payment directly or indirectly to the injured party, such payment shall offset the tortfeasor's liability to the injured party.

## II.

Walsh seeks review of the trial court's determination of damages. In reviewing a damage award, an appellate court considers the evidence in the light most favorable to the verdict. *Rayford v. Metro. Transit Comm'n*, 379 N.W.2d 161, 165 (Minn.App.1985), *review denied* (Minn. Feb. 14, 1986). This court will set aside a damage award only if it is "manifestly and palpably contrary to the evidence." *Levienn v. Metro. Transit Comm'n*, 297 N.W.2d 272, 273 (Minn.1980) (citation omitted). Said another way, a reviewing court will not disturb a damage award "unless its failure to do so would be shocking or would result in plain injustice." *Hughes v. Sinclair Mktg., Inc.*, 389 N.W.2d 194, 199 (Minn.1986) (citations omitted). An appellate court shall review a district court's determination of damages under an abuse-of-discretion standard. *Peters v. Mut. Benefit Life Ins. Co.*, 420 N.W.2d 908, 916 (Minn.App.1988).

Walsh contends that the trial court failed to properly ascertain the damage to the property. If property is damaged but not completely destroyed, damages are calculated to be either (1) the difference in value before and after the loss or (2) the reasonable cost of repair, whichever is less. *In re Commodore Hotel Fire & Explosion Cases*, 324 N.W.2d 245, 248 (Minn.

1982). Here, the trial court opted to calculate damages using the difference in the property's value before and after the fire.

Walsh argues that the trial court erred in its valuation by placing too much reliance on the VanLandschoots' expert and by not fully considering the evidence provided by Walsh's appraisal expert. Walsh also points to evidence contained in the tax forms filed by Laura VanLandschoot and the VanLandschoots' former business partner.

As the supreme court has recognized, "real estate appraisal is at best an imprecise art." *Montgomery Ward & Co. v. County of Hennepin,* 482 N.W.2d 785, 791 (Minn.1992). A trial court is in the best position to determine the credibility of witnesses, and an appellate court will not substitute its judgment. Minn. R. Civ. P. 52.01; *Sigurdson v. Isanti County,* 386 N.W.2d 715, 721 (Minn.1986). Further, if an expert's decision is reasonably based in fact, then an appellate court shall not reverse the factfinder's decision between conflicting opinions. *Leonard v. Parrish,* 420 N.W.2d 629, 633 (Minn.App.1988).

Because the record demonstrates that the trial court relied upon substantial evidence in making its determination, we conclude that the trial court did not abuse its discretion in its finding of damages. The trial court sufficiently explained what evidence it found to be persuasive and outlined its rationale in assessing the damages. Thus, the trial court's determination of the property damage amount is not manifestly and palpably contrary to the evidence, and we affirm its ruling on the amount of damages.

## DECISION

The district court properly considered the post-trial motion to reduce the judgment. The court properly offset the judgment by the amount paid by the tortfea-

sor's insurer. The court's determination of damages was not manifestly and palpably contrary to the evidence.

**Affirmed.**