LEAMINGTON CO., Appellant,

v.

NONPROFITS' INSURANCE ASSO-
CIATION, an Interinsurance
Exchange, Respondent.

No. C6–02–1212.

Court of Appeals of Minnesota.

May 27, 2003.

Paul C. Peterson, William Lawrence Davidson, Sara J. Lathrop, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for appellant.

Charles J. Noel, Jennifer Lynn Kjos Fackler, Charles J. Noel & Associates, P.A., Eagan, MN, for respondent.

Considered and decided by
TOUSSAINT, Chief Judge, LANSING, Judge, and HUSPENI, Judge.[*]

## OPINION

TOUSSAINT, Chief Judge.

This is an appeal from a summary judgment in which the district court applying

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the comparative fault act, Minn.Stat. 604.01, subd. 5 (2002), held that any damages appellant recovers from its lessee's property-damage insurer, respondent, must be offset by the amount of its settlement with its lessee for the same damages. Appellant contends that (a) neither the policy nor the comparative fault act supports this result, and instead the common-law collateral-source rule applies and (b) genuine issues of material fact exist as to whether the settlement compensated appellant for the same damages as those it sought to recover from the insurer. Because (a) the common-law collateral-source rule does not apply when a third party is not the source of funds and (b) no factual dispute exists as to which damages the settlement applies, we affirm the district court.

## FACTS

Appellant Leamington Co., which owns the Francis Drake Building, leased the property to People Serving People, Inc. (PSP) from 1983 through May 1996 for use as a homeless shelter. During the lease period, the property was damaged by water and by vandalism and destructive acts by PSP's guests and invitees. Leamington sued PSP for damages.

PSP and Leamington reached a settlement that was read into the district court record in December 1996. The settlement provides in relevant part:

> P.S.P., Inc. will tender payment to Leamington Company in the amount of $340,000 by cashier's check on December 23, 1996, at 10:30 a.m. in Mr. Anderson's office. That payment is hereby attributed by the parties to the tort waste claim in this litigation.

The settlement further provided that Leamington would "have the exclusive right to pursue and recover on any real property damage insurance claim" to the property.

During the relevant years, PSP had a property-damage insurance policy with respondent Nonprofits' Insurance Association (NIA). Leamington, as authorized by the settlement, brought an action for property damage against NIA under PSP's insurance policy. NIA asserted a number of defenses, including the argument that any judgment Leamington obtained should be offset by the $340,000 that PSP paid Leamington, which NIA contended was for the same tort-waste damages for which Leamington sought recovery in the insurance lawsuit.

The district court granted summary judgment to the insurer. In an earlier appeal, the supreme court reversed the summary judgment and remanded for further proceedings. *Leamington Co. v. Nonprofits' Ins. Ass'n.,* 615 N.W.2d 349, 351 (Minn.2000). On remand, the district court heard and denied additional motions for summary judgment from both parties. In the portion of the decision at issue here, the district court ruled that Leamington's $340,000 settlement with PSP would be credited against any final settlement or judgment that Leamington obtained from NIA.

The parties ultimately reached a stipulation under which judgment was entered to allow Leamington to seek review of the district court's decision to offset the settlement amount. The parties agreed that if appellate review resulted in a remand, Leamington reserved its right to seek payment on the insurance policies, with maximum damages of $340,000, and NIA reserved its right to assert other defenses. The district court entered judgment, and this appeal followed.

Leamington moved this court to supplement the record to include pleadings in a separate action involving the same proper-

ty, which was not before the district court in the present action. This court denied the motion and struck any statements in appellant's brief that relied on pleadings outside the record.

## ISSUES

I. When a property owner seeks damages from the insurer of its lessee who damaged its property, after already having settled with the lessee, is the insurer entitled to offset the amount of that settlement against any liability it has under the policy?

II. Is there a genuine issue of material fact as to whether the settlement amount was for the same damages for which the lessor sought coverage from the lessee's property insurer?

## ANALYSIS

### I.

 Construction of a statute is a question of law reviewable de novo. *Hibbing Educ. Ass'n v. Pub. Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985). Similarly, "[t]he interpretation of an insurance policy is a question of law reviewed de novo." *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002) (citation omitted).

 Leamington challenges the district court decision ordering the offset of the settlement against any liability NIA had under the policy on several grounds. First, it asserts that because the insurance policy does not provide for an offset or credit for a settlement, NIA is obligated to provide property damage coverage pursuant to the terms of the policy. "Subject to the statutory law of the state, a policy of insurance is within the application of general principles of the law of contracts." *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 926 (Minn.1983) (citations

omitted). Thus, the lack of a provision regarding an offset in the policy does not preclude an offset if a statute or general rule of law regarding offsets otherwise applies.

Leamington next challenges the district court's decision that under the comparative fault act, Minn.Stat. § 604.01, subd. 5 (2002), the amount that Leamington recovered from NIA should be offset by the amount of its settlement with PSP. Leamington contends that the act is inapplicable to contract actions such as its insurance coverage action against NIA.

The comparative fault act addresses the apportionment of damages if two or more persons are jointly liable. Minn.Stat. § 604.02, subd. 1 (2002). The relevant portion of the section on which the district court relied provides:

> *All settlements and payments made under subdivisions 2 and 3 shall be credited against any final settlement or judgment * * *.* [T]he court shall first apply the provisions of subdivision 1 and then shall reduce the amount of damages so determined by the amount of the payments previously made to or on behalf of the person entitled to such damages.

*Id.* § 604.01, subd. 5 (emphasis added). Subdivision 2 addresses settlement for damages resulting from personal injury or death, and subdivision 3 addresses settlement for property damages or economic loss. *Id.*, subds. 2, 3.

 Generally, the comparative fault statute is not intended to apply to contract claims. *Lesmeister v. Dilly,* 330 N.W.2d 95, 101–02 (Minn.1983). The lawsuit at issue here is an action for coverage under an insurance policy, which is analyzed under the law of contracts. *Waseca Mut.,* 331 N.W.2d at 926. Consequently, the

comparative fault statute does not apply here.

The district court, however, ruled that subdivision 5 governed and noted that Leamington's lawsuit against PSP alleged waste, which constitutes fault under Minn. Stat. § 604.01, subd. 1a. But in addressing this issue, we are not examining Leamington's lawsuit against PSP, but rather Leamington's lawsuit against NIA, which is an action to determine insurance coverage that is contractual in nature. *Waseca Mut.*, 331 N.W.2d at 926.

In support of its argument that subdivision 5 should apply, NIA cites language from our decision in *Oelschlager v. Magnuson*, 528 N.W.2d 895, 900 n. 4 (Minn. App.1995), *review denied* (Minn. Apr. 27, 1995). *Oelschlager* involved a church member's personal-injury action based on sexual abuse by a pastor. *Id.* at 897. One of the issues that the *Oelschlager* court considered was whether the plaintiff's judgment against the church should be reduced by his Pierringer settlement with a church conference to which the church belonged. *Id.* at 899–900. In holding that it should, this court cited Minn.Stat. 604.01, subd. 5, and stated that it

> clearly states that *all* settlements made to an injured person must be credited against a final judgment, without reference to the legal theory underlying the judgment or the settlement.

*Id.* at 900 n. 4. Despite this broad language, we are constrained by the fact that *Oelschlager* was a personal-injury action. It did not address the issue raised here and does not stand for the proposition that subdivision 5 applies to contract actions. Instead, we look to the rule that the comparative-fault statute does not apply to contract claims. *Lesmeister*, 330 N.W.2d at 101–02.

■ We now address whether the collateral-source rule applies or whether any recovery Leamington obtains from NIA should be offset against the proceeds from Leamington's settlement with PSP. Under this rule, money or services that a plaintiff receives "in reparation of the injury from a source other than the tortfeasor" will not be "credited against the tortfeasor's liability" even though they may partially or completely reimburse the plaintiff for damages suffered. *Hueper v. Goodrich*, 314 N.W.2d 828, 830 (Minn.1982). This rule was based on the Restatement (Second) of Torts, 920A(2) (1979). *VanLandschoot v. Walsh*, 660 N.W.2d 152, 155 (Minn.App.2003). The common-law collateral source rule has been partially abrogated by statute, under which a tortfeasor in a personal injury action may move the court to limit a plaintiff's recovery by the amount the plaintiff received from a collateral source. Minn. Stat. 548.36, subd. 2 (2002); *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 331 (Minn.1990). But the statutory collateral-source rule applies only to cases involving physical injury to the person. *Duluth Steam Coop. Ass'n v. Ringsred*, 519 N.W.2d 215, 217 (Minn.App.1994). It does not apply to property damage. *Id.* Therefore, the statutory collateral source rule does not apply to the facts of this case.

The common-law collateral source rule was recently addressed in a case with similar facts. *VanLandschoot*, 660 N.W.2d 152, 153. There, the property owners' building was damaged by a fire caused by the negligence of a welder, and they sued this tortfeasor. *Id.* at 153. The only issue raised in the district court was the amount of damages, on which the court made a finding. *Id.* The tortfeasor's insurer had previously paid a sum to the property owners' insurer, and the tortfeasor moved to deduct this amount from his liability to the property owners. The district court granted the motion. *Id.* This court then considered the issue on appeal.

In resolving the issue, this court adopted the Restatement (Second) of Torts, 920A(1) (1979). *VanLandschoot, Id.* at 155. Under that section, the common-law collateral-source rule does not apply to payments made by a tortfeasor or person acting for him. *Id.*

> A payment made *by a tortfeasor or by a person acting for him* to a person whom he has injured *is credited against his tort liability,* as are payments made by another who is, or believes he is, subject to the same tort liability.

Restatement (Second) of Torts 920A(1) (emphasis added) (quoted in *VanLandschoot,* at 155).

> If a tort defendant makes a payment toward his tort liability, it of course has the effect of reducing that liability. *This is also true of payments made under an insurance policy that is maintained by the defendant,* whether made under a liability provision or without regard to liability * * *.

*Id.* cmt. a (emphasis added) (quoted in *VanLandschoot,* 660 N.W.2d at 155).

In *VanLandschoot,* this court noted that subsection 1 encouraged potential tortfeasors to obtain insurance. *VanLandschoot,* 660 N.W.2d at 155. Further, this court noted that if the common-law collateral-source rule were applied under the circumstances, it would serve to punish the prudent person who obtains liability insurance. *Id.*

We now apply section 920A(1) of the Restatement and *VanLandschoot* to the present case. Here, the tortfeasor paid the property owners who had suffered property damage; the property owners then went to the tortfeasor's insurer to recover the same damages.[1] Thus, like *VanLandschoot,* the source of the collateral funds was not a third party. But in contrast to VanLandschoot, here the tortfeasor itself, rather than the tortfeasor's insurer was the source of the collateral funds. Just as funds from a tortfeasor's insurer may be applied against any recovery from that tortfeasor, so should funds received from the tortfeasor be applied against any recovery from the tortfeasor's insurer. In this way, the party damaged by the acts of the tortfeasor does not obtain a double recovery from essentially the same source. Therefore, we affirm the district court's ruling as to the offset, although on different grounds.

## II.

The final issue is if there was a genuine issue of material fact as to whether the settlement amount was for the same damages for which Leamington seeks recovery from NIA in the insurance-coverage action. In its order denying summary judgment, the court ruled that "[t]he settlement with PSP and the claims against NIA are for the same tort waste damages." *See* Minn. R. Civ. P. 56.04 (noting that even if the case is not fully adjudicated on the summary judgment motion, the court may specify which material facts exist without substantial controversy). On appeal the determination of whether there is a genuine issue of material fact is reviewed de novo. *Gunderson v. Harrington,* 632 N.W.2d 695, 701 (Minn.2001). A party must "present specific admissible facts showing that there was a genuine issue for trial" to avoid summary judgment. *Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 848 (Minn.1995) (citation omitted).

---

1. For purposes of this discussion, we assume that the same damages are at issue. Later in this opinion, we discuss and reject Leamington's claim that there are genuine fact issues as to whether the damages are the same.

Leamington contends that a question of material fact exists as to whether the PSP settlement represents the full compensation for Leamington's waste damages, or whether the settlement compensated Leamington for a variety of claims in addition to waste damages. Leamington had filed claims and counterclaims against PSP for waste, conversion, unpaid rents, and attorney fees. PSP settled Leamington's claims by paying $340,000 to Leamington. The December 1996 settlement explicitly states "[t]hat payment is hereby attributed by the parties to the tort waste claim in this litigation." But, Leamington cites a May 1997 letter written by its attorney making the argument that the settlement resolved claims in addition to waste damages. Even assuming this letter is part of the trial court file here, an assertion by the attorney does not constitute a specific admissible fact that can raise a genuine issue of material fact in this case. *See Nicollet Restoration,* 533 N.W.2d at 848 (holding general assertions insufficient to create fact issue for trial). Consequently, Leamington cannot prevail in this argument.

### DECISION

The district court decision holding that any damages that Leamington recovers from NIA must be offset by the amount of the settlement between Leamington and PSP is affirmed. There are no genuine issues of material fact as to whether the settlement and the insurance action are for the same damages.

**Affirmed.**