# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3051

_____

American State Bank,            *
                                            *

      Plaintiff - Appellee,         *
                                            *   Appeal from the United States

    v.                                    *   District Court for the
                                            *   Eastern District of Arkansas.

Union Planters Bank, N.A.,      *
                                            *

      Defendant - Appellant.     *

_____

Submitted: February 12, 2003

Filed: June 13, 2003

_____

Before HANSEN,[*] Chief Judge, LOKEN and SMITH, Circuit Judges

_____

LOKEN, Chief Judge.

When one payee indorses a check that is payable jointly to two payees, and a bank pays the indorsing payee without the other's consent, Article 3 of the Arkansas Uniform Commercial Code provides that the bank is liable for conversion to the non-consenting payee. In this situation, "the measure of liability is *presumed* to be the amount payable on the instrument." ARK. CODE ANN. § 4-3-420(b) (emphasis added).

_____

[*]The Honorable David R. Hansen stepped down as Chief Judge on March 31, 2003. The Honorable James B. Loken became Chief Judge on April 1, 2003.

The appeal in this diversity case raises the difficult question whether the bank's liability under Arkansas law is limited to the actual harm to the co-payee caused by the conversion. The district court granted summary judgment for the aggrieved co-payee, concluding the defendant bank must pay the face amount of the converted checks. We conclude the Supreme Court of Arkansas would limit plaintiff's recovery to its actual damages and therefore reverse.

## I.

In June 1999, American State Bank (ASB) of Craighead County, Arkansas granted a $425,000 revolving line of credit to the Womack & Womack Partnership, secured by liens on the Partnership's crops and on agricultural subsidy payments it received. Between October 1999 and April 2000, partner Ricky Womack indorsed twenty-four checks totaling $262,330.76 and deposited the proceeds in the Partnership's account with Union Planters Bank (UPB) of Shelby County, Tennessee. Each check was jointly payable to the Partnership and ASB, reflecting ASB's liens, but UPB paid the checks on Ricky's sole indorsement, without ASB's knowledge or consent. Ricky then withdrew the proceeds from the Partnership account and lost the money gambling. When ASB discovered the unauthorized deposits in May 2000, it sued UPB for conversion in Arkansas state court. UPB removed the case to federal court, invoking the court's diversity jurisdiction.

ASB moved for summary judgment. In response, UPB presented evidence that, after discovering Ricky's misconduct, ASB made over $200,000 of additional advances to the Partnership -- now controlled by Ricky's brother -- and extended the term of its secured loan from March 2001 to March 2002. Since then, the Partnership has remained current on its crop loan payments and -- as of January 2002 -- had paid the loan down to $255,093.56. The district court nevertheless granted summary judgment awarding ASB the face amount of the converted checks. On appeal, UPB concedes that it is liable to ASB for conversion under § 3-420(a) of the Arkansas

UCC.[1] But UPB argues that its liability under § 3-420(b) should be limited to ASB's actual damages, and that genuine issues of material fact preclude the grant of summary judgment on the damages issue. See FED. R. CIV. P. 56(c). Reviewing these issues de novo, we agree. See Brookins v. Int'l Motor Contest Ass'n, 219 F.3d 849, 852 (8th Cir. 2000) (standard of review).

## II.

The issue on appeal is whether ASB may recover the face amount of the converted checks as a matter of law, despite evidence that the actual harm to ASB from the conversion may be a lesser amount. In other words, would UPB's evidence of reduced actual harm, if believed, be legally sufficient to rebut the presumption in § 3-420(b) that UPB is liable for the face amount of the checks?

In construing the presumption, we encounter two distinct issues to which it may apply. The first concerns the value of the converted checks. "Ordinarily, the proper measure of damages for conversion of property is the market value of the property at the time and place of its conversion." McQuillan v. Mercedes-Benz

---

[1]The Uniform Commercial Code Commentary confirms that UPB is liable for conversion:

> [Section 3-420(a)] covers cases in which an instrument is payable to two persons [who] are not alternative payees . . . . Under Section 3-110(d) the check can be negotiated or enforced only by both persons acting jointly. Thus, neither payee acting without the consent of the other, is a person entitled to enforce the instrument. If [only one payee] indorses the check [and] Depositary Bank takes the check for deposit to [the indorsing payee's account], Depositary Bank is liable to [the other payee] for conversion of the check if she did not consent to the transaction.

Ark. Code of 1987 Ann., Commentaries Vol. A, Comment to § 3-420 (A.C.A. § 4-3-420) n. 1.

<u>Credit Corp.</u>, 961 S.W.2d 729, 733 (Ark. 1998). Thus, it is sensible to create a statutory presumption that the value of a converted check or other negotiable instrument is its face amount. And it is apparent that the UCC drafters had this issue in mind in creating the presumption. The only specific examples of rebuttal evidence provided in the Commentary to the former UCC provision[2] concerned the value of the converted negotiable instruments: "Evidence is admissible to show that for any reason such as insolvency or the existence of a defense the obligation is in fact worth less, or even that it is without value." UCC § 3-419, cmt. n.4 (1966). The value of the converted checks is not at issue in this case. UPB paid their face amounts, and all parties concede that was their value.

The second issue is broader -- whether the conversion plaintiff may recover as damages the face amount of the instrument *even if* that amount exceeds the actual loss. The plain language of § 3-420(b) suggests that it also encompasses this issue. The statute provides that "the measure of *liability* is presumed to be the amount payable on the instrument," not simply that "the value of the converted instrument" is presumed to be the amount payable on the instrument. But the statute and its Commentary give no guidance as to how the presumption should be applied to this issue. The UCC simply defines "presumed" to mean that "the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence." ARK. CODE. ANN. § 4-1-201.

ASB argues that "[t]he law is silent in Arkansas but clear elsewhere: UPB can rebut the damages presumption and mitigate its damages if it can prove ASB actually received the proceeds of the 24 wrongfully paid checks." ASB cites two diversity cases to this effect, <u>D & G Equip. Co. v. First Nat'l Bank of Greencastle, Pa.</u>, 764 F.2d 950, 959 (3d Cir. 1985), and <u>Sherrill White Constr., Inc. v. S.C. Nat'l Bank</u>, 713 F.2d 1047, 1050-51 (4th Cir. 1983). And there are other decisions that adopt this

---

[2]The current UCC § 3-420(b) replaced former § 3-419(2) in the 1990 revision to Article 3, which was enacted in Arkansas in 1991.

restrictive view of how the presumption may be rebutted.  See, e.g., Lawyers' Fund for Client Protection v. Bank Leumi Trust Co. of N.Y., 727 N.E.2d 563, 567-68 (N.Y. 2000); Conwed Corp. v. First-Citizens Bank & Trust Co., 202 S.E.2d 22, 24 (S.C. 1974).  These authorities led the district court to conclude that the "prevailing view in other states is that [UPB] is liable for the face amount of the instruments."

We have two problems with this conclusion.  First, the decisions on which the district court relied construed the *irrebuttable* presumption that applied to actions against drawee banks under the former UCC provision.  See U.C.C. § 4-319(2) (1966) ("the measure of the drawee's liability is the face amount of the instrument.  In any other action . . . the measure of liability is presumed to be the face amount of the instrument.").  Even under this provision, UPB as a depositary bank would have been entitled to rebut the presumption.[3]  Second, UPB cites cases from other States that limited a bank's conversion liability, even under the irrebuttable presumption, to the plaintiff's actual loss, if the loss was less than the value of the converted instruments.  See Pamar Enters., Inc. v. First State Bank of E. Detroit, 580 N.W.2d 11, 16-17 (Mich. App. 1998) (applying mitigation of damages defense to avoid unjust enrichment); White County Bank v. Noland Co., 449 S.E.2d 325, 327 (Ga. App. 1994) (liability limited to "the actual damages sustained"); Midwest Indus. Funding v. First Nat. Bank, 973 F.2d 534, 538 (7th Cir. 1992) (recognizing unjust enrichment

_____

[3]The UCC Commentary explains that the irrebuttable presumption was deleted "because it is not clear why the former law distinguished between the liability of the drawee and that of other converters."  See Ark. Code of 1987 Ann., Commentaries Vol. A, Comment to § 3-420 (A.C.A. § 4-3-420) n.2.  That explanation seems to understate the extent of the change, because under the UCC a depositary or collecting bank (like UPB in this case) was liable to the drawee bank for breach of warranty and therefore had to indemnify the drawee bank for its liability under the former irrebuttable presumption.  See E.S.P., Inc. v. Midway Nat'l Bank of St. Paul, 466 N.W.2d 417 (Minn. App. 1991).  Thus, the amendment effectively changed the presumption from irrebuttable to rebuttable for all the banks in a collection chain that were liable for the conversion.

defense under Illinois law); <u>Nutt v. Chemical Bank</u>, 555 A.2d 8, 11 n.4 (N.J. Super. 1989) (recovery of full amount "should be conditioned upon proof that the payee had not received all or part of the funds from either the forger or other person to whom the proceeds of the instrument had been diverted").

From this array of conflicting cases, we conclude there is no "prevailing view" as to whether a bank's liability is limited to the plaintiff's actual loss, despite the presumption in § 3-420(b). Rather, courts applying the UCC have determined when and how the presumption may be rebutted in accordance with more general state law damage principles, which of course vary from State to State. Thus, to determine how the Supreme Court of Arkansas would decide the issue presented by this appeal, we turn our focus to the Arkansas law of damages for conversion.

Our inquiry begins with <u>Starkey Constr., Inc. v. Elcon, Inc.</u>, 457 S.W.2d 509 (Ark. 1970). In <u>Starkey</u>, the drawer of a series of checks sued the drawee to recover the face amount of checks that had been paid over forged indorsements. The former irrebuttable presumption applied, but the Supreme Court of Arkansas nonetheless held that the drawee bank was not liable "to the extent the money actually reached the [intended] payees." The Court refused to apply the irrebuttable presumption, relying upon "the principle of statutory construction that a statute will not be construed so as to overrule a principle of established common law, unless it is made plain by the act that such a change in the established law is intended." 457 S.W.2d at 513. The Court relied on banking law authorities for the "established law" that a bank is not liable for paying on a forged indorsement if the money in fact reached the intended person. But its result was consistent with the more general Arkansas law of damages recoverable for conversion: "the law permits evidence of the return of the property to its owner in mitigation of damages only when certain circumstances are present: (1) that the owner must have accepted the return of the goods; (2) that the original conversion occurred by mistake; and (3) that the return of the goods occurred promptly after the

discovery of the mistake and before the commencement of the action for conversion." McQuillan, 961 S.W.2d at 733.

Starkey teaches that the § 3-420(b) presumption may be rebutted by evidence that the proceeds of converted checks in fact found their way to the intended recipient(s). But that does not resolve the issue in this case. Ricky Womack squandered the proceeds wrongfully deposited in the Partnership's account. UPB's evidence is that ASB has received other money from the Partnership that reduced its actual loss from the conversion. In our view, whether those later payments should be credited against UPB's conversion liability is an issue properly resolved by reference to the Arkansas damage law principle known as the collateral source rule:

> This Court has defined the collateral source rule as a general rule that [a plaintiff's] recoveries from collateral sources do not redound to the benefit of a tortfeasor, even though double recovery for the same damage by the injured party may result. However, for the collateral source rule to pertain, the third-party payment must be wholly independent of the tortfeasor.

Douglas v. Adams Trucking Co., 46 S.W.3d 512, 517 (Ark. 2001) (citations and quotations omitted); see Smith v. Gen. Cas. Co. of Wis., 394 N.E.2d 804, 807 (Ill. App. 1979) (referencing the collateral source doctrine in construing § 3-420(b)'s predecessor). UPB, a conversion tortfeasor, is seeking to reduce its liability with evidence that ASB's actual loss has been reduced by payments ASB received from a third party, the Partnership. The question, then, is whether those payments are "wholly independent of the tortfeasor."

On this record, we cannot say as a matter of law that payments by the Partnership reducing ASB's line-of-credit loan were from an independent collateral source. In the first place, the Partnership was the co-payee on the converted checks. When Ricky Womack indorsed the checks and deposited them in the Partnership

account at UPB, he was acting as the Partnership's agent. Thus, the Partnership, too, is likely liable to ASB for conversion. See ARK. CODE ANN. §§ 4-3-402(a) and the first sentence of § 3-420(a). In general, "payments made by another who is, or believes he is, subject to the same tort liability" are credited against a tortfeasor's liability. RESTATEMENT (SECOND) OF TORTS § 920A(1), a section of the Restatement cited for guidance in Montgomery Ward & Co. v. Anderson, 976 S.W.2d 382, 385 (Ark. 1998). In the second place, ASB was made a co-payee on the converted checks to protect its liens securing the line-of-credit loan. In this circumstance, we doubt the Supreme Court of Arkansas would consider payments by the co-payee satisfying the debt secured by those liens to be so "wholly independent" of the conversion as to warrant a double recovery by ASB. Cf. Trans-Am. Steel Corp. v. Fed. Ins. Co., 535 F. Supp. 1185, 1190-92 (N.D. Ga. 1982).

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.