# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-2240

_____

Northeast Bank

*Plaintiff - Appellee*

v.

The Hanover Insurance Group

*Defendant*

Wells Fargo Bank, N.A.

*DefendantThird Party Plaintiff - Appellant*

v.

Percy Pooniwala; Dinaz Pooniwala; Shreekanth Maripally; Ashok Shetty

*Third Party Defendant*s

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 11, 2015
Filed: August 6, 2015

_____

Before GRUENDER, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Hanover Insurance Group (Hanover) issued two checks totaling $350,000 made jointly payable to Grand Rios Investments, LLC (Grand Rios), Northeast Bank, and Alex N. Sill Company. Without Northeast Bank's endorsement, knowledge, or consent, Wells Fargo Bank, N.A. (Wells Fargo), paid the full amount of the checks to Grand Rios. Northeast Bank brought suit against Hanover and Wells Fargo. The district court granted Hanover's motion to dismiss the counts of the complaint pertaining to Hanover. Northeast Bank and Wells Fargo both filed motions for summary judgment. The district court granted summary judgment in favor of Northeast Bank and denied Wells Fargo's motion for summary judgment. Wells Fargo now appeals, arguing that while its payment constituted conversion under the Uniform Commercial Code, see Minn. Stat. § 336.3-420, Northeast Bank has not suffered any damages because it was subsequently paid the full amount of the debt for which the two checks were security. We agree with Wells Fargo, and therefore we reverse the district court's grant of summary judgment to Northeast Bank and remand this matter with instructions to enter judgment in favor of Wells Fargo.

I.

In 2003, Northeast Bank issued an $18 million construction loan to an entity to construct a hotel and waterpark in Brooklyn Park, Minnesota. The hotel and waterpark struggled, and eventually that entity defaulted on its obligations. In 2010, Grand Rios purchased the hotel and waterpark for $5 million. Part of the purchase price included Grand Rios's assumption of $4.61 million of the debt owed to Northeast Bank by the original owner. Grand Rios secured this obligation by, among other things, (1) personal guaranties from Grand Rios's three principals, (2) a mortgage of the hotel and waterpark, and (3) Grand Rios's obligation under the mortgage to maintain certain property insurances for Northeast Bank's benefit. As

relevant here, Grand Rios purchased a property, liability, and business-interruption policy from Hanover.

In December 2010, the roof of the hotel and waterpark was damaged by a snowstorm. Grand Rios hired Alex N. Sill Company to prepare, submit, and negotiate any claims submitted to Hanover. On February 15, 2011, Hanover issued a check in the amount of $100,000 made payable to "Alex N. Sill Company and Grand Rios Investment LLC and Northeast Bank" to cover costs associated with mitigating the damage caused by the leaking roof. On February 25, Grand Rios presented this check to Wells Fargo, and although the check did not contain Northeast Bank's endorsement, Wells Fargo accepted the check for deposit into Grand Rios's account.

On March 29, 2011, Hanover issued an additional check, this time for $250,000, to the same joint payees. Again, Grand Rios presented the check to Wells Fargo without Northeast Bank's endorsement, and Wells Fargo again accepted the check for deposit into Grand Rios's account. Grand Rios did not notify Northeast Bank of the issuance of these checks prior to deposit.

By April 2011, Northeast Bank was threatening Grand Rios with foreclosure due to Grand Rios's repeated failure to make mortgage payments. In June 2011, Northeast Bank, Grand Rios, and the three guarantors entered into a Settlement Agreement under which Grand Rios and the three guarantors agreed to a voluntary foreclosure, to assign all insurance proceeds to Northeast Bank, to pay $50,000 to Northeast Bank, and to allow a state court to appoint a receiver for the hotel and waterpark. An escrow account was established to cover operating costs of the hotel and waterpark. Grand Rios paid the $50,000 it agreed to pay under the Settlement Agreement into the escrow account, and Hanover made additional insurance payments of approximately $1.2 million into the escrow account. As of July 31, 2011, Grand Rios owed Northeast Bank $4,993,226.24. On August 1, 2011, Northeast Bank purchased the property in a sheriff's sale for $4,606,157.21, and this

-3-

sale price was credited against the mortgage indebtedness Grand Rios owed to Northeast Bank. After the receivership was cancelled, Northeast Bank received $596,299.27 from the escrow account. Thus, Northeast Bank received approximately $200,000 more than the debt Grand Rios owed. Northeast Bank later sold the property to CarMax.

Northeast Bank initiated this action against Wells Fargo, seeking to recover $350,000 on the theory of conversion. The parties agreed that Wells Fargo had improperly converted the checks. On cross-motions for summary judgment, the district court rejected Wells Fargo's argument that allowing Northeast Bank to recover the $350,000 would constitute a second recovery on the same claim. The district court granted Northeast Bank's motion for summary judgment and denied Wells Fargo's motion for summary judgment. Wells Fargo appeals.

II.

We review a district court's decision on cross-motions for summary judgment de novo. See J.E. Jones Constr. Co. v. Chubb & Sons, Inc., 486 F.3d 337, 340 (8th Cir. 2007). "Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Id. We apply the substantive law of Minnesota to this action. See Chew v. Am. Greetings Corp., 754 F.3d 632, 635 (8th Cir. 2014) ("Because we are a federal court sitting in diversity, we apply the substantive law of the forum state.").

The parties agree that the relevant statute is Minnesota Statutes section 336.3-420 (adopting the Uniform Commercial Code section 3-420), which states that "the measure of liability [for conversion] is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument." They disagree about what is necessary to rebut the presumption as to

-4-

damages. Wells Fargo argues that Northeast Bank's recovery must be limited to its actual damages and because Northeast Bank did not suffer actual damages, it is not entitled to recover from Wells Fargo for the conversion. Northeast Bank responds that to rebut the presumption, there must be evidence that the proceeds from the converted funds reached the intended recipients. In other words, absent evidence that Grand Rios paid $350,000 to Northeast Bank towards the loan debt, the presumption is not rebutted and the district court's grant of summary judgment must be affirmed.

In American State Bank, we explained "the [UCC] and its Commentary give no guidance as to how the presumption should be applied to [the] issue [of the measure of liability]" and thus "courts applying the UCC have determined when and how the presumption may be rebutted in accordance with more general state law damage principles." Am. State Bank v. Union Planters Bank, N.A., 332 F.3d 533, 536-37 (8th Cir. 2003). We then applied Arkansas law to determine "whether the conversion plaintiff may recover as damages the face amount of the instrument *even if* that amount exceeds the actual loss." Id. at 536. Ultimately, we remanded the case to the district court to determine whether payments made to the conversion plaintiff from a third party fell within Arkansas's collateral source rule as a payment "wholly independent of the tortfeasor" or would instead reduce the tortfeasor's liability. Id. at 538.

As in Arkansas, Minnesota applies the same Restatement (Second) of Torts that was at issue in American State Bank. Under that Restatement:

> A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.

Restatement (Second) of Torts § 920A(1); see VanLandschoot v. Walsh, 660 N.W.2d 152, 155 (Minn. Ct. App. 2003) (adopting section 920A(1) and holding that payments

from tortfeasor's insurer are credited to the tortfeasor); see also Leamington Co. v. Nonprofits' Ins. Assn., 661 N.W.2d 674, 679 (Minn. Ct. App. 2003) (recognizing VanLandschoot's adoption of section 920A(1) and holding that funds received from a tortfeasor be applied against any recovery from the tortfeasor's insurer).

We agree with Wells Fargo's argument that the settlement Northeast Bank received from Grand Rios, who is a joint tortfeasor in this conversion action, must be credited against Wells Fargo's liability. As we held in American State Bank, "[i]n general, 'payments made by another who is, or believes he is, subject to the same tort liability' are credited against a tortfeasor's liability." 332 F.3d at 538 (quoting Restatement (Second) of Torts § 920A(1)). No one disagrees that Grand Rios was also liable for conversion of the two checks. Northeast Bank attempts to distinguish American State Bank on the basis that Grand Rios never made a mortgage payment after the conversion, and thus the converted funds never reached Northeast Bank. This difference does not take this matter outside of the reasoning of American State Bank and the Minnesota cases adopting the Restatement (Second) of Torts. As of July 31, 2011, Grand Rios had paid $50,000 in a guarantor's payment and still owed Northeast Bank $4,993,226.24. Northeast Bank cannot show that it suffered actual loss in this conversion because it received a full payment of its debt through a combination of the foreclosure sale amount of $4,606,157.21 and the assignment of the insurance proceeds, which resulted in Northeast Bank receiving $596,299.27 from the escrow account. Thus, Wells Fargo has successfully rebutted the section 336.3-420 presumption as to the measure of liability in this conversion and to allow the district court's decision to stand would result in a double recovery to Northeast Bank.

III.

Accordingly, we reverse the district court's grant of summary judgment to Northeast Bank and its denial of summary judgment to Wells Fargo. We remand this

matter to the district court with directions to enter judgment in favor of Wells Fargo.

_____